

**U.S. Department of Justice**
Civil Division, Federal Programs Branch

Kuntal Cholera                                    Tel.: (202) 305-8645
Trial Attorney                              E-mail: kuntal.cholera@usdoj.gov

September 17, 2020

The Honorable Gerald A. McHugh
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 9613
Philadelphia, PA 19106

     **Re:**    **Plaintiffs' September 16, 2020 Discovery Motion (*Pennsylvania v. DeJoy*, No. 20-cv-4096).**

Dear Judge McHugh,

     Plaintiffs contend that two developments support their need for a Rule 30(b)(6) deposition: (i) USPS voluntarily filed two supplemental, clarifying declarations, and (ii) the testimony in Jones did not meet Plaintiffs' standards. As discussed below, neither of these two alleged developments justifies Plaintiffs' request, which remains duplicative of other discovery and which would still be unduly burdensome and not proportionate to the needs of the case.

     *First*, Plaintiffs contend that a Rule 30(b)(6) deposition is warranted because Defendants recently provided supplemental declarations from Robert Cintron and Angela Curtis "indicating that material factual statements previously presented to this Court are false." Pls.' Letter at 1. Defendants did no such thing. The supplemental Cintron and Curtis declarations do not confess to any prior "inaccurate statements." Pls.' Letter, at 2. To the contrary, they confirm that the prior declarations of both Cintron and Curtis were accurate. For example, in Cintron's initial declaration, he stated that the Stand-Up Talk at issue was "locally prepared," and "was not prepared, reviewed, or approved by Headquarters." Cintron Decl. ¶ 24. The supplemental Cintron declaration confirms that the Stand-Up Talk "was prepared by the then-Area Vice President ('AVP') for what was then the Southern Area and his time," and "Headquarters did not review" the Stand-Up Talk "after it was drafted by the then-Southern AVP's team." Cintron Supp. ¶ 2. Cintron clarified that the "contents of the" Stand-Up Talk "[drew] from a July 10, 2020 teleconference conducted with AVPs and members of Headquarters," but he never indicated that Headquarters reviewed the Stand-Up Talk. Id. ¶ 3. He then confirmed that Headquarters had to "issue clarifications of USPS policy, including with AVPs, making clear that certain statements in the [Stand-Up Talk] were not accurate statements of USPS policy." *Id.* ¶ 4. Cintron then noted, again, "Late and extra trips are not and were not banned." *Id.*

Although the Stand-Up Talk drew from certain statements during the teleconference, both Cintron and Curtis testify (in both their original and supplemental declarations) that, based on their knowledge, this Stand-Up Talk *never* accurately reflected USPS policy. *See* Cintron Decl. ¶ 24 n.1; Cintron Suppl. Decl. ¶ 4; Curtis Decl. ¶ 24 n.1; Curtis Suppl. ¶ 4. And importantly, one day after the Stand-Up talk was released, "Headquarters began to issue clarifications of USPS policy." Cintron Decl. ¶ 4. The facts remain the same now as they have been at every point in this litigation: (1) the SUT did not reflect accurate USPS guidance (as shown by the fact that it was *immediately* corrected); and (2) late and extra trips were not and are not banned.

Plaintiffs protest that they want a deposition to probe a Rule 30(b)(6) designee about the July 10 teleconference. But Plaintiffs again fail to explain how this will support either their statutory or their constitutional claims. For both, the underlying factual question is straightforward: what are the policy changes recently adopted by USPS that USPS will follow in the run-up to the election? USPS has represented, in declarations and interrogatory responses, that there is no prohibition on late and extra trips. Evidence concerning comments during a teleconference which may have given a different impression—comments which have since been clarified—are not relevant.

*Second*, Plaintiffs also contend that the *Jones* hearing did not sufficiently touch on each and every topic on Plaintiffs' wish-list, and thus a 30(b)(6) deposition is now necessary. But these are topics for which USPS has already produced substantial information, or topics that are immaterial to Plaintiffs claims (and thus do not warrant the burden of a 30(b)(6) deposition). For example, Plaintiffs claim that *Jones* did not involve any testimony on "[t]he Postal Service's policy with regards to approving overtime 'as needed' and whether there were any changes in this policy." Pls.' Letter, at 2. But Cintron has already stated that neither the "Postmaster General" nor "Headquarters direct[ed] that overtime hours were not permitted or were curtailed." Cintron Decl. ¶ 28; *see also* Colin Decl. ¶ 4. It is unclear what a Rule 30(b)(6) deposition on this topic would add.[1] The same is true with respect to Plaintiffs' objection that Jones did not cover "[t]he Postal Service's policy with regards to letter carrier start and stop time and whether there have been any changes." Pls.' Letter, at 3. The original Cintron declaration provides exhaustive information concerning USPS policies concerning scheduling. Plaintiffs fail to explain why this information is either insufficient or warrants a Rule 30(b)(6) deposition. And indeed, Cintron could very well be the 30(b)(6) designee if the Court authorized a deposition, which would be of little benefit given the extent of his testimony thus far (most recently, testimony under oath and subject to cross-examination).

Plaintiffs also refer to notices USPS recently sent encouraging voters to promptly request their ballots, which has given rise to litigation in the District of Colorado, with the plaintiffs in that case arguing that these notices may confuse voters. Pls.' Letter, at 3. But this "voter confusion" theory has nothing to do with Plaintiffs' claims, all of which deal with alleged mailing delays. Plaintiffs' reliance on this new litigation is little more than an opportunistic attempt to secure an unnecessary deposition on an immaterial topic, despite the Court's conclusion that this deposition would obviously impose a significant burden on USPS.

---

[1] And it is unclear to USPS that Plaintiffs' representation is even correct. USPS understands that Justin Glass *did* address the overtime issue at the Jones hearing.

Further, most or all of the topics flagged in Plaintiffs' letter would not be encompassed by the topics identified in their 30(b)(6) deposition notice. Indeed, most of the topics in Plaintiffs' letter relate to the July 10 teleconference, and the recent litigation in Colorado. Although Plaintiffs' 30(b)(6) topic list covers "changes" that Defendants made or planned to make concerning "transportation, processing, and delivery of mail," this question would only address the *actual changes* that were made (not the history behind the miscommunication referenced in the supplemental Cintron and Curtis declarations).

*Third*, Plaintiffs wholly ignore the fact that they have served interrogatories, due Friday, that almost entirely overlap with their Rule 30(b)(6) topics. Plaintiffs should first review the Defendants' responses and identify what information, if any, has not been covered before seeking a Rule 30(b)(6) deposition in these expedited proceedings.

\* \* \* \* \* \*

USPS will not re-hash each argument from its September 15, 2020 letter. However, these arguments—concerning burden and necessity—apply equally today as they did two days ago. There is sufficient evidence in the record detailing the scope of any new policy changes in place. The Court should not authorize a Rule 30(b)(6) deposition simply because Plaintiffs refuse to take USPS at its word.

Respectfully submitted,

/s/ Kuntal Cholera
Kuntal V. Cholera

CC: All Counsel of record via ECF.