# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, STATE OF CALIFORNIA, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, and STATE OF NORTH CAROLINA,<br><br>       Plaintiffs,<br><br>v.<br><br>LOUIS DEJOY, in his official capacity as United States Postmaster General; ROBERT M. DUNCAN, in his official capacity as Chairman of the Postal Service Board of Governors; and the UNITED STATES POSTAL SERVICE,<br><br>       Defendants. | No. 2:20-cv-4096 |

**BRIEF OF *AMICI CURIAE* BRADY, TEAM ENOUGH, AND MARCH FOR OUR LIVES ACTION FUND IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..............................................................................................................................1

STATEMENT OF INTERESTS OF *AMICI* ...................................................................................2

ARGUMENT.....................................................................................................................................3

I.     Defendants' Voter Suppression Efforts in Context ............................................................3

II.    Voter Suppression Plays a Key Role in Preventing Gun Violence Prevention Measures Becoming Law..................................................................................................4

III.   Supplemental Legal Authority...........................................................................................6

        A.     Defendants' Actions Violate the Guarantee Clause..................................................6

        B.     The Federalist System of Dual Sovereigns is Guaranteed by the Tenth Amendment...............................................................................................................6

CONCLUSION..................................................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bond v. United States*,
    572 U.S. 844 (2014)......................................................................................................6, 7

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991)......................................................................................................6, 7

*In re Duncan*,
    139 U.S. 449 (1891).........................................................................................................6

*New York v. United States*,
    505 U.S. 144 (1992).........................................................................................................6

**Constitutional Provisions and Statutes**

18 U.S.C. § 922(t)......................................................................................................................4

U.S. Const., art. IV, § 4.............................................................................................................6

**INTRODUCTION**

The fundamental promise of an American "government of the people, by the people, for the people" relies on Americans voting to choose their representatives. Democracy becomes unrepresentative – dysfunctional – when the right to vote is obstructed. The failure of American government to effectively address our gun violence epidemic is a particularly egregious consequence of dysfunctional democracy. Every day in the United States, more than 300 people are shot; over 100 of these individuals do not survive their wounds.[1] Gun violence impacts Black and Brown communities disproportionately: one recent study estimates that if current death rates hold, one in 38 Black men will be killed by gunfire.[2] Most Americans support common-sense legislation to prevent gun violence, but such legislation is not the law. Protecting the ability of Americans to vote is critical for protecting American lives from gun violence.

Today there is unprecedented momentum and support for gun violence prevention policies. But the coronavirus pandemic, and the real threat of armed intimidation at the polls, may keep many Americans from voting – unless they are able to vote by mail. State and local officials and individual citizens have, justifiably, come to rely upon effective United States Postal Service ("USPS") service in planning how to administer and/or participate in federal, state, and local elections. Voting by mail has never been more important.

Knowing the importance of voting by mail in the November 2020 elections, Defendants have sought to deteriorate USPS services to make voting harder. If they succeed, it is likely that the gun lobby, not the American people, will decide much of our gun policy and that our gun

---

[1] KEY STATISTICS, Bradyunited.org, https://www.bradyunited.org/key-statistics.

[2] Dr. Ashwini R. Sehgal, *Lifetime Risk of Death from Firearm Injuries, Drug Overdoses and Motor Vehicle Accidents in the United States,* AM. J. OF MED. (2020), available at https://www.amjmed.com/article/S0002-9343(20)30363-6/pdf.

1

violence epidemic will continue, unabated.  *Amici* write to support Plaintiffs' effort to stop Defendants' illegal, unconstitutional, and undemocratic activities. [3]

## STATEMENT OF INTERESTS OF *AMICI*

A leader in gun violence prevention for over 40 years, *amicus curiae* Brady is one of the nation's oldest and largest non-partisan, non-profit organizations dedicated to reducing gun violence through education, research, legal advocacy and political action.  Brady has filed numerous briefs as *amicus curiae* in cases involving state and federal firearms laws.

*Amicus curiae* Team ENOUGH is a youth-led, Brady-sponsored initiative that educates and mobilizes young people, including young voters, in the fight to end gun violence.  Team ENOUGH is committed to bringing a fresh perspective and a common-sense approach to America's gun policy, and has an interest in promoting laws that seek to help end gun violence.

*Amicus curiae* March For Our Lives Action Fund (MFOL) is a non-profit organization of young people, including young voters, from across the country fighting for sensible gun violence prevention policies. Following the shooting at Marjory Stoneman Douglas High School in Parkland, Florida, MFOL immediately began mobilizing young people to effect change at the polls. These young people, who disproportionately vote by mail, have a vital interest in ensuring their ballots are counted.

*Amici* have dedicated significant effort to ensure that every American is able to vote in a safe manner in the November 2020 elections, including launching the "Voting Access Saves

---

[3] *Amici* state that no party or counsel to any party in this matter authored this brief in part or in whole, no party or counsel to any party in this matter contributed money intended to fund the preparation or submission of this brief, and no person other than *amici* contributed money intended to fund the preparation or submission of this brief.

Lives" ("VASL") campaign, which, among other things, provides a state action toolkit that identifies state voting laws and information.[4]

## ARGUMENT

I. Defendants' Voter Suppression Efforts in Context

Voter suppression has taken on a variety of insidious forms, including reducing the number of polling places to make it harder for individuals (particularly individuals from communities of color) to vote.[5] Poor and marginalized communities most likely to be targeted by voter suppression efforts are those most disproportionately impacted by gun violence.[6] Defendants' actions preventing voting by mail exacerbates voter suppression trends on a national scale. The effect will be to force individuals to choose between risking their lives due to exposure to a deadly virus and/or violence at the hands of armed agitators in order to vote in-person, or not voting.

Voting by mail is for many the best, if not only, mechanism by which they can vote in 2020 without risking their lives. Congregating in enclosed, crowded spaces for extended periods (such as a busy polling station with long lines) is particularly likely to enhance the risk of the transmission of COVID-19; individuals from communities of color are most likely to face these

---

[4] Brady, Team ENOUGH, and MFOL, *Voting Access Saves Lives: State Actions*, available at https://www.bradyunited.org/program/democracy (last visited Sept. 8, 2020).

[5] *See, e.g.,* Mark Niesse, Maya T. Prabhu and Jacquelyn Elias, *Voting Precincts Closed Across Georgia Since Election Oversight Lifted,* ATLANTA J. CONST. (Sept. 4, 2018), available at https://www.ajc.com/news/state--regional-govt--politics/voting-precincts-closed-across-georgia-since-election-oversight-lifted/bBkHxptlim0Gp9pKu7dfrN/.

[6] *See, e.g.,* Richard V. Reeves and Sarah E. Holmes, *Guns and Race: The different worlds of Black and White Americans*, Brookings Inst. (Dec. 15, 2015), available at https://www.brookings.edu/blog/social-mobility-memos/2015/12/15/guns-and-race-the-different-worlds-of-black-and-white-americans/ (compiling CDC data between 2011-2013).

dangerous conditions if forced to vote in-person.[7] COVID-19 has already had a disproportionately devastating impact on these communities.[8] Americans also face a real, credible fear of armed intimidation at the polls, including racially motivated or otherwise hate-fueled intimidators carrying firearms at or near polling places.[9] The significant dual threats of coronavirus and armed intimidation make it critical that USPS service effectively enables mail-in voting.

II.     Voter Suppression Plays a Key Role in Preventing
        Gun Violence Prevention Measures Becoming Law

Gun violence prevention measures that Brady and Team ENOUGH have campaigned for enjoy overwhelming support among Americans. For example, requiring background checks for all gun sales – rather than only sales at federally licensed gun dealers, as federal law currently requires (*see* 18 U.S.C. § 922(t)) – has consistently enjoyed around 90 percent support from the

---

[7] *See* Matthew Harwood, *Explainer: Why a Vote-by Mail Option Is Necessary*, Brennan Ctr. (Apr. 7, 2020), available at https://www.brennancenter.org/our-work/research-reports/why-vote-mail-option-necessary.

[8] *See* Maria Godoy, *What Do Coronavirus Racial Disparities Look Like State By State?,* NPR (May 30, 2020), available at https://www.npr.org/sections/health-shots/2020/05/30/865413079/what-do-coronavirus-racial-disparities-look-like-state-by-state.

[9] *See, e.g.,* Graham Kates, *Homicide Charges Announced Against Kyle Rittenhouse, Accused of Killing 2 at Kenosha Protests,* CBS NEWS (Aug. 30, 2020), available at https://www.cbsnews.com/news/kyle-rittenhouse-homicide-charges-kenosha-shooting-first-degree-homicide-jacob-blake-protest-wisconsin/.

American populace as a whole,[10] including most gun owners.[11]  Extreme Risk Protection Order ("ERPO") laws also enjoy overwhelming support.[12]

In a functional representative democracy, measures supported by such huge majorities would be law, but something has gone horribly wrong with our system of representative government to prevent that.  Voter suppression plays a critical role in preventing enactment of such popular gun violence prevention laws.  H.R. 8 – a universal background check bill which was passed by the House of Representatives as one of its first legislative priorities in 2019 – provides a compelling example.[13]  This bill languished for well over a year without Senate Majority Leader McConnell even allowing Senators to vote on it.  When Senators know that the groups most affected by and enraged about the gun violence epidemic will be unable to hold them accountable at the polls, they feel emboldened to cater to the National Rifle Association and the billion-dollar gun industry it represents rather than voters.  *Amici* join Plaintiffs in demanding that the federal government cease its efforts to further reduce its accountability to the will of the people through voter suppression efforts because these efforts will pose significant obstacles to ending widespread gun violence in the United States.

---

[10] *See, e.g.,* Domenico Montanaro, *Americans Largely Support Gun Restrictions to 'Do Something' About Gun Violence*, NPR (Aug. 10, 2019), available at https://www.npr.org/2019/08/10/749792493/americans-largely-support-gun-restrictions-to-do-something-about-gun-violence (citing 89% support in a July 2019 poll).

[11] *See, e.g.,* Edith Honan, *Poll Finds Gun Owners, Even NRA Members, Back Some Restrictions*, REUTERS (Jul. 24, 2012), available at https://www.reuters.com/article/us-usa-shooting-denver-guns/poll-finds-gun-owners-even-nra-members-back-some-restrictions-idUSBRE86O02O20120725 (showing 74% of current or former NRA members and 87% of other gun owners supported universal background checks).

[12] Everytown for Gun Safety, *Fact Sheet: Extreme Risk Laws Save Lives,* available at https://everytownresearch.org/report/extreme-risk-laws-save-lives/ (last visited Sept. 8 2020) (reflecting 85% support for a federal ERPO law).

[13] The Bipartisan Background Checks Act of 2019, H.R. 8, 116th Cong. (2019).

III.    Supplemental Legal Authority

*Amici* agree with Plaintiffs' analysis of how Defendants have violated various constitutional and statutory provisions.  *See* Complaint (ECF No. 1).  Here *amici* raise two additional points in support of Plaintiffs' motion.

   A.    Defendants' Actions Violate the Guarantee Clause

Changes to the USPS affect states' ability to effectively conduct their own elections.  *See, e.g.,* Plaintiffs' Memorandum of Law (ECF No. 18-1) at 28.  This violates the Guarantee Clause's requirement that "[t]he United States shall guarantee to every state in this union a republican form of government."  U.S. Const., art. IV, § 4; *see also In re Duncan*, 139 U.S. 449, 461 (1891); *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991).  Although Guarantee Clause claims have been considered nonjusticiable, the Supreme Court has questioned this rule.  *See New York v. United States,* 505 U.S. 144, 184-185 (1992); *cf. Gregory*, 501 U.S. at 463 (1991).  This is precisely the extraordinary case where the Guarantee Clause should serve as an additional constraint on the power of the federal government to undermine state sovereignty.

   B.    The Federalist System of Dual Sovereigns
          is Guaranteed by the Tenth Amendment

The Supreme Court (and other courts) have repeatedly stressed the critical importance of preserving "the constitutional balance between the National Government and the States."  *Bond v. United States*, 572 U.S. 844, 862 (2014) (quoting prior decision in the *Bond* case) (internal quotation omitted); *see also Gregory*, 501 U.S. at 458. In *Bond*, the Court re-emphasized that "[b]y denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power."  *Bond v. United States*, 572 U.S. at 863; see also *Gregory*, 501 U.S. at 458 ("The constitutionality mandated balance of

power between the States and the Federal Government was adopted by the Framers to ensure the protection of our fundamental liberties.") (internal quotation omitted).

*Bond* and *Gregory* demonstrate that the integrity of the federalist system guaranteed by the Tenth Amendment is a necessary check on federal interference with state sovereignty – here, protecting states' administration of their own elections.

## CONCLUSION

The public health crisis of gun violence plaguing America can only be solved if the federal government is responsive to the will of its citizens. Defendants' efforts to eliminate or curtail voting by mail at a time when in-person voting may be life-threatening are unconstitutional, illegal and undemocratic measures that would prevent Americans from being truly represented and obtaining the gun violence prevention polices they want and need.

Dated: September 24, 2020                     Respectfully submitted,

                                                                   /s/ Gary F. Lynch
Gary F. Lynch
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243
glynch@carlsonlynch.com

*Counsel of Record for Amici Curiae*

| | |
|---|---|
|   /s/ Jonathan E. Lowy<br>Jonathan E. Lowy<br>BRADY<br>Chief Counsel and Vice President, Legal<br>840 First Street NE<br>Suite 400<br>Washington, D.C. 20002<br>202-370-8104<br>jlowy@bradyunited.org |   /s/ Christa Y. Nicols<br>Christa Y. Nicols<br>BRADY<br>Litigation and Constitutional Counsel<br>840 First St., NE, Suite 400<br>202-370-8131<br>Washington, D.C., 20002<br>cnicols@bradyunited.org |

  /s/ Robert Cross
Robert Cross
BRADY
Counsel, Trial & Appellate Litigation
840 First St., NE, Suite 400
Washington, D.C., 20002
914-714-3418
rcross@bradyunited.org

*Counsel for Amici Curiae*

8