UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**Commonwealth of Pennsylvania, State of California, State of Delaware, District of Columbia, State of Maine, Commonwealth of Massachussetts, and State of North Carolina**,

Plaintiffs,

v.

**Louis DeJoy, in his official capacity as United States Postmaster General, Robert M. Duncan, in his official capacity as Chairman of the Postal Service Board of Governors, and the United States Postal Service**,

Defendants.

Case No. 20-cv-4096

**MOTION FOR CLARIFICATION
AND/OR RECONSIDERATION, AND
REQUEST FOR TELECONFERENCE**

### I.      Introduction.

With less than a month to go before the November 2020 election, the Postal Service must ensure both that its employees receive clear guidance on the policies they must follow, and that its overall network operates efficiently. The Postal Service's ability to achieve this goal, however, is at risk in light of competing Court-ordered obligations which may inadvertently disrupt postal operations to the detriment of the public.

Thus far, four district courts, including this Court, have issued a total of five preliminary injunctions imposing a patchwork of overlapping obligations on the Postal Service. The Postal Service is now tasked with synthesizing these injunctions, which include multiple broad provisions that the Postal Service must interpret and execute in a coherent fashion so its employees understand

the policies that are currently in place. The Postal Service has gone to great lengths to issue guidance that does exactly that.[1] But certain vague, overlapping requirements in these injunctions may be read to impose crippling obligations on the Postal Service that would be near impossible to implement or would cause further delays. The Postal Service has therefore sought to clarify those obligations before the appropriate courts to ensure that it is complying with court orders while avoiding massive operational disruptions.

On September 28, 2020, this Court issued its own multi-part preliminary injunction. Its goal, as reflected in the accompanying memorandum opinion, is to ensure that late and extra trips will be authorized and used as needed, and overtime will be authorized at appropriate levels, all to ensure that mail (particularly Election Mail) will be delivered consistent with traditional Postal Service standards. Thus far, the Postal Service has taken a number of steps to ensure that this goal is met. It has issued clarifying instructions confirming, among other things, that late and extra trips are "not to be unreasonably restricted or prohibited," mail should not "be left behind," and overtime is not subject to any new restrictions and will be "utilized as necessary." Ex. A (Clarifying Operating Instructions). The Postal Service has also issued additional guidance specific to Election Mail, which further emphasizes that "[m]anagers are authorized to use their best business judgment to meet service commitments" and thus may use late and extra trips "to complete timely mail delivery," and "[o]vertime is authorized and instructed to be used as necessary to fulfill our mission and expeditiously move Election Mail." Ex. B; *see also* Ex. C (committing "additional resources" to fulfill the Postal Service's "number one priority" of "proper handling and timely delivery of all Election Mail, especially ballots.").

---

[1] *See*, *e.g.*, Ex. A (September 21, 2020 Clarifying Operational Instructions); Ex. B (September 24, 2020 Election Mail Stand-up Talk); Ex. C (September 25, 2020 Memorandum on Additional Resources for Election Mail Delivery).

This Court's preliminary injunction incorporates many of these commitments, but also includes a number of other provisions, some of which may require the Postal Service to take affirmative steps that could disrupt its operations at this pivotal time. Four specific elements of the Court's preliminary injunction are relevant here: (i) USPS must cease implementing the July 14, 2020 Guidelines issued by Robert Cintron concerning when late trips and extra trips may be appropriate, (ii) USPS must cease implementing any initiatives or efforts concerning late and extra truck trips and carrier start and stop times instituted between June 15, 2020 and September 16, 2020, (iii) USPS must cease implementing any initiatives or efforts concerning overtime instituted between June 15, 2020 and September 16, 2020, and (iv) the incorporation of the terms of the preliminary injunction issued by the Southern District of New York in *Jones v. USPS*. The Court should clarify these provisions, or reconsider them, in order to ensure that they are not construed to require efforts that would run counter to what Defendants understand to be the Court's intent.

*First*, the provision requiring USPS to cease implementing the Guidelines issued by Cintron (PI Order ¶ 4(b))—which describe when late/extra trips will facilitate prompt delivery—is vague and risks creating unintended operational issues. To be clear, USPS understands that it is not permitted by this Court's order to prohibit late or extra trips, and it has issued guidance to that effect. *See* Ex. A. But the Guidelines served other functions. For example, they clarified pre-existing uncertainty. Before they were issued, there were no clear, centralized guidelines concerning the use of late/extra trips, and so different local divisions sometimes relied upon different criteria, and some may have outright banned such trips. The Guidelines set uniform criteria, identifying factors to consider when determining when extra and late trips will assist with improved service performance. Furthermore, these Guidelines help to reduce counterproductive late and extra trips, which tend to increase delays in the mail overall. If USPS were to expressly

withdraw these Guidelines now, it may create the impression that local offices must always permit late and extra trips without any limitation which unquestionably would negatively impact service. For example, if a tractor-trailer truck must leave a processing and distribution center at 4 a.m. in order to transport the mail to an airport for a flight at 5 a.m., leaving late due to a small amount of mail not yet loaded onto the truck would cause the entire tractor-trailer load of mail to miss the air connection. Ultimately, this could produce delays in the delivery of Election Mail—the precise harm the Court sought to cure. Such harms would only be exacerbated by the requirement that the Postal Service must send out *even more* guidance to the field, on top of recently issued guidance making clear that late and extra trips are not banned, which may confuse lower-level employees and lead to additional delays.

*Second*, the two broad provisions requiring USPS to cease implementing any "efforts" or "initiatives" relating to late/extra trips, carrier start times, and overtime (PI Order ¶ 4(b), (c)) raise similar issues. It is unclear what constitutes an "effort" or "initiative," and it is thus unclear which Postal Service practices, efforts, documents, or communications would be covered. And, if read literally, these provisions may require over 20,000 supervisors and managers throughout the nation to cease any and all efforts relating to standard operations plans, trips, carrier schedules, and overtime. This could not be what the Court had intended and would undoubtedly have a negative impact on service. Additionally, these provisions—like the provision concerning the Guidelines—may be read to require the Postal Service to withdraw helpful guidance, and to send confusing follow-up messages to the field which may result in further delays.

*Third*, the Court should clarify that the provision incorporating the September 25, 2020 *Jones* injunction (PI Order ¶ 1) only requires USPS to follow that injunction *as modified and enforced* by the Southern District of New York. The September 25, 2020 *Jones* injunction has been

modified by the Southern District of New York because, as that court acknowledged, certain provisions warranted further specificity. Absent further clarification here, the Court's injunction may be read to incorporate the September 25 *Jones* injunction *as originally written* (rather than as modified and as currently in effect). Furthermore, the September 25 *Jones* injunction also requires the parties to submit briefs concerning the content and form of a supplemental guidance document to be distributed to all USPS managerial staff. The Court should clarify that its incorporation of the *Jones* injunction does not require the parties here to craft yet *another* separate, supplemental guidance document.

In light of the efforts USPS has undertaken to comply with the injunctions in other, related cases—including the Clarifying Operational Instructions, *see* Ex. A, and supplemental Election mail memoranda, *see* Exs. B and C—there is little risk that the requested clarifications or modifications herein will produce any unique harm. Accordingly, the Court should clarify or modify its preliminary injunction. Specifically, for the first three provisions at issue—regarding guidance over late/extra trips and overtime—the Court should clarify that these provisions do not compel any further affirmative communication or conduct on part of USPS, but rather require only that USPS abide by the policies set forth in the Clarifying Operational Instructions (Ex. A), the September 24 Election Mail Stand-Up Talk (Ex. B), and the September 25 Election Mail Resources memorandum (Ex. C). With respect to the fourth provision—incorporating the September 25 *Jones* injunction—the Court should clarify that the Postal Service must comply with the terms of the *Jones* injunction as subsequently modified and enforced by the Southern District of New York, and that the parties here need not construct a separate, supplemental guidance document.

II. **Background**

Plaintiffs brought this suit to challenge Postal Service policies which allegedly "[(i)] prohibit[ed] late or extra trips by postal workers . . .; [(ii)] requir[ed] carriers to adhere rigidly to start and stop times . . .; and [(iii)] limit[ed] the use of overtime." PI Order, at 4. The Court canvassed several documents from both the USPS Headquarters and local levels and ultimately found that although there was no formal policy banning late and extra trips, the Postal Service, in the Court's view, nonetheless "discourage[d]" late and extra trips. PI Mem., at 7. The Court reached a similar conclusion concerning overtime, finding that although overtime was not formally capped, the Postal Service, in the Court's view, "encouraged restrictions on overtime." PI Mem., at 18. Finally, the Court found that "Defendants at some point effectively implemented strict start and stop requirements for letter carriers." PI Mem., at 14.

The Court thus issued a preliminary injunction involving several components. For example, the Court incorporated, as part of its injunction, a September 21, 2020 USPS document entitled "Clarifying Operational Instructions" (the "9/21 Clarifying Instructions"). PI Order ¶ 3. This document states, among other things, that "late or extra trips that are reasonably necessary to complete timely mail delivery, [are] not to be unreasonably restricted or prohibited," and that "Postal Service Headquarters has not imposed, and will not impose, any nationwide changes that ban or newly restrict overtime prior to Election Day."[2] Ex. A, at 1, 3.

Four provisions in the preliminary injunction are at issue in this motion:

- Defendants . . . are hereby ENJOINED from . . . continued implementation or enforcement of the Guidelines regarding transportation sent by Robert Cintron to Area Vice Presidents and other agency representatives on July 11, 2020 and July 14, 2020, unless and until the Postal Service presents such changes to the Postal

---

[2] As noted in the USPS Response Brief, USPS Headquarters currently does not impose any strict start or stop times for carriers. *See* PI Resp., at 21. Although there was a limited pilot program at fewer than 300 of the over 10,000 delivery units that sought to encourage carriers to begin their routes early, that pilot program has since been discontinued. *See id.*

6

- Regulatory Commission and obtains an advisory opinion after a public hearing is held . . .. [PI Order ¶ 4(b)].

- Defendants . . . are hereby ENJOINED from . . . continued implementation or enforcement of any and all organizational efforts, initiatives, "operational pivots," new efforts to "better adhere to existing operating plans" or priority shifts with regard to changes in late and extra truck trips and carrier start and stop times that began during the time period of June 15, 2020 until September 16, 2020, unless and until the Postal Service presents such changes to the Postal Regulatory Commission and obtains an advisory opinion after a public hearing is held . . .. [PI Order ¶ 4(c)].

- Defendants . . . are hereby ENJOINED from . . . continued implementation or enforcement of any and all organizational efforts, initiatives, "operational pivots," or priority shifts with regard to work hours reduction targets, penalty overtime, pre-tour overtime, new manager approval requirements for work hours and overtime, and other overtime requests and approvals that began during the time period of June 15, 2020 until September 16, 2020, unless and until the Postal Service presents such changes to the Postal Regulatory Commission and obtains an advisory opinion after a public hearing is held . . .. [PI Order ¶ 4(d)].

- This Court adopts the order entered by the United States District Court for the Southern District of New York in *Jones v. United States Postal Service*, No. 20 Civ. 6516 (S.D.N.Y. Sept. 25, 2020) (Marerro, J.) and makes it an Order of this Court. [PI Order ¶ 1].

For the reasons that follow, the Court should modify its preliminary injunction to clarify or reconsider these four provisions (collectively, the "Challenged Provisions"), which are either operationally impractical or would have a negative effect on the Postal Service's ability to deliver the mail on time.

### III. Standard of Review.

When issuing an injunction, a court must "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." F.R.C.P. 65(d)(1). "This language strongly suggests that prohibited conduct will not be implied from such orders; that they are binding only to the extent they contain sufficient description of the prohibited or mandated acts." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971). Thus, "ambiguities and omissions in [these] orders redound to the benefit of the" parties subject to them. *Id.* Additionally, Courts "should pay

7

particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To the extent the Court construes this motion as one seeking reconsideration of certain preliminary injunction provisions, Defendants respectfully ask that this Court grant such relief. Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also* Local Rule 7.1(g).  "[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973).

### IV.  <u>Argument.</u>

The Postal Service has already sought to comply with the goals of this Court's preliminary injunction: to make clear to Postal Service employees that late trips, extra trips, and overtime are not prohibited, and are to be utilized when reasonably necessary, consistent with longstanding practice. Even assuming prior communications or documents suggested a contrary policy, these materials have been superseded (and clarified) by the 9/21 Clarifying Instructions. Furthermore, USPS has issued further guidance indicating that late trips, extra trips, and overtime are especially appropriate if necessary to expeditiously process Election Mail. *See* Ex. B ("Overtime is authorized and instructed to be used as necessary to fulfill our mission and expeditiously move Election Mail."); Ex. C ("the use of extraordinary measures . . . is authorized and expected to be executed by local management between October 26 and November 24, to accelerate the delivery of ballots . . . [t]hese extraordinary measures include, but are not limited to, expedited handling, [and] extra deliveries."). In light of these efforts, and this Court's Order incorporating certain of those efforts

into its preliminary injunction, the only net effect of the Challenged Provisions could be to impose uncertain obligations on the Postal Service, and likely cause confusion, creating a material risk of mail delays. The Postal Service does not believe that this Court intended this result.

    A.  <u>Cintron's Guidelines for Late and Extra Trips.</u>

The preliminary injunction prohibits the Postal Service from "implement[ing] or enforc[ing] . . . the Guidelines regarding transportation sent by Robert Cintron to Area Vice Presidents and other agency representatives on July 11, 2020 and July 14, 2020, unless and until [the Postal Service] presents such changes to the Postal Regulatory Commission and obtains an advisory opinion after a public hearing is held." PI Order ¶ 4(a). This provision, if read broadly, requires the Postal Service to expressly disavow all aspects of these Guidelines, rather than requiring the Postal Service to ensure that these Guidelines are not understood to impose a prohibition or undue restriction on late and extra trips. This reading would raise several operational and practical concerns.

As an initial matter, it is unclear what this Court intended in prohibiting the Postal Service from "implement[ing] or enforc[ing]" the Guidelines. For example, this provision could be read to require USPS to *affirmatively* inform field offices that they should not follow any aspects of the Guidelines, or to engage in other affirmative conduct meant to limit any effect these Guidelines may have on local postal practices. Alternatively, it could be read to simply enjoin Postal Service Headquarters from enforcing these Guidelines against local offices whose practices are inconsistent with these Guidelines. This issue alone merits clarification.

In any event, this provision would produce uncertainty and confusion. These Guidelines sought to clear up pre-existing uncertainty regarding when late and extra trips should be used. *See* 3d Supp. Cintron Decl. ¶ 4. Before these Guidelines were issued, there was no centralized, clear

written guidance on the subject, and thus different local offices may have followed different written or unwritten criteria when determining when to use late and extra trips. *See id.* ¶¶ 4-5. Robert Cintron had previously sought to provide certain "best practices" for when late trips and extra trips would reduce delays, and the Guidelines were his attempt to memorialize these best practices. *Id.* ¶ 4. Thus, the Guidelines do not, and never did, intend to restrict late and extra trips for its own sake, but rather to define when late and extra trips would indeed facilitate the expeditious delivery of mail. *See id.* ¶¶ 3, 6, 10. In any event, to the extent the Guidelines were interpreted in a more restrictive fashion, the Clarifying Operational Instructions make clear that late and extra trips are not banned. *See* Ex. A.

Thus, withdrawing what remains of the Guidelines now, during this critical time for the Postal Service, will be operationally counterproductive. Any Postal Service communication disavowing the Guidelines may create the impression that any and all late and extra trips are operationally appropriate, regardless of circumstance, which could ultimately harm performance. *See* id. ¶ 8. As discussed in the attached Second Supplemental Cintron Declaration:

> During the course of the seven-day-a-week nationwide transportation operations, circumstances arise where some late trips and extra trips are not appropriate, and thus some mail may be left behind, but this is necessary to avoid the delay of a greater volume of mail. Every day, local managers in both delivery and processing operations must evaluate whether, under the existing circumstances, a truck should leave on time or be delayed and whether extra trips should be utilized.

2d Supp. Cintron Dec. ¶ 12. For example, if trucks are held at a processing and distribution center in order to wait for additional mail, this delay could cause the mail trucks to "arrive to an air transportation center too late to meet the scheduled departure time of the flight," *id.* ¶ 14, and thus would delay all of the mail on that truck. While extra trips can often remedy at least some of this delay, there are circumstances "when extra trips are not feasible," such as where contractors have

10

no trucks available. *Id.* ¶ 17. Managers therefore require a certain amount of discretion to make operational decisions about when to permit late and extra trips in order to maximize timely mail transportation and delivery operations. *See id.* ¶ 16; *see also* Ex. A ¶ 5. Thus, keeping the Guidelines in place, in conjunction with the Clarifying Operational Instructions, may ensure that late trips and extra trips are used when appropriate, but not when they are likely to cause delays. Indeed, local offices are currently using late trips and extra trips as needed: from September 12 to October 4, 2020, "the Postal Service ran from approximately 914 to 1596 daily late trips and approximately 459 to 671 extra trips daily." *See* 3d Suppl. Cintron Decl. ¶ 11.

Separately, the act of issuing *any* further guidance at this juncture may create confusion given all of the new guidance being distributed. *See id.* ¶¶ 9-10. Indeed, the Postal Service must craft another guidance document pursuant to the Southern District of New York injunction. *See infra* at 13. This Court should thus clarify that its preliminary injunction does not require USPS to affirmatively disavow the Guidelines, but rather orders the Postal Service to make clear that late trips and extra trips are to be permitted as "reasonably necessary," and are "not to be unreasonably restricted or prohibited," as set forth by the Clarifying Operational Instructions. Ex. A.

B. <u>"Efforts" and "Initiatives" concerning Late Trips, Extra Trips, and Overtime.</u>

Two provisions in the preliminary injunction generally prohibit the "continued implementation or enforcement of any and all organizational efforts, initiatives, 'operational pivots,'" instituted between June 15, 2020 and September 16, 2020 relating to "late and extra truck trips," "carrier start and stop times," and overtime. PI Order ¶ 4(c) & (d). Respectfully, Defendants submit that these provisions are vague and would create operational confusion and uncertainty if read broadly.

As an initial matter, it is unclear which activities, communications, or documents would constitute covered "organizational efforts" or "initiatives," and thus these provisions do not give USPS clear notice over the activities it must cease. And if these provisions are given their broadest possible reading, they may require USPS to reverse *any* recent communication concerning the broad topic areas of adhering to operating plans, late trips, extra trips, and overtime. In other words, this requirement could require USPS to perform the near impossible task of identifying each instance in which its lower level managers discussed late trips with an employee, or each and every "effort" related generally to "late times," even if it has nothing to do with this litigation.

And even if the Postal Service could effectively implement these provisions, the outcome would be disastrous. The Postal Service has over 20,000 supervisors and managers throughout the nation that routinely take steps to adhere to operations plans, and the preliminary injunction could be read to require that all their efforts over a three-month period cease. *See* 3d Supp. Cintron Decl. ¶ 1; USPS FY2019 Annual Report to Congress, at 16, https://about.usps.com/what/financials/annual-reports/fy2019.pdf (accessed Oct. 5, 2020). The Postal Service has operational plans for all facets of its efforts to deliver mail—from mail collection, to mail processing, distribution, transportation, and finally, to delivery. Some or many of these plans may tangentially implicate late trips, extra trips, or carrier start and stop times. And if all supervisors and managers are forbidden to continue efforts they made to adhere to those plans over the three-month period specified by the Court, the Postal Service could be thrown into disarray, creating long delays in mail service. *See* 3d Supp. Cintron Decl. ¶ 9. The Court should thus clarify that the Postal Service must abide by the policies set forth in its Clarifying Operational Instructions, but does not have to engage in any further affirmative conduct or communication.

C.  Incorporating the *Jones* Injunction.

The preliminary injunction states that the "Court adopts the order entered by the United States District Court for the Southern District of New York in *Jones v. USPS*, No. 20 Civ. 6516 (S.D.N.Y. Sept. 25, 2020) (Marrero, J.) and makes it an Order of this Court." PI Order ¶ 1. In *Jones*, the court instructed the parties to "settle [on] an Order providing Plaintiffs appropriate relief," and set forth a default injunction that would take effect "[i]n the event the parties fail[ed] to" reach an agreement. 20-cv-6516, ECF No. 49, at 83-87 (S.D.N.Y. Sept. 21, 2020). On September 25, 2020, the parties issued a joint proposal (and flagged a dispute between the parties concerning overtime), and the court generally entered that proposal the same day. *See Jones v. USPS*, 20-cv-6516, ECF No. 57 (S.D.N.Y. Sept. 25, 2020). The parties in *Jones* then litigated their dispute over the remaining overtime provision, which Judge Marrero resolved on September 29, 2020. *See Jones v. USPS*, 20-cv-6516, ECF No. 66 (S.D.N.Y. Sept. 29, 2020).

In its preliminary injunction, the Court incorporated the September 25 *Jones* Order. Defendants request that the Court clarify that its incorporation of the September 25, 2020 injunction in Jones also includes any changes made by the Southern District of New York to the September 25, 2020 injunction (*e.g.*, the modification instituted by the September 29, 2020 order). Absent this clarification, the Court's preliminary injunction may be read to require USPS to implement provisions that the Southern District of New York has agreed were insufficiently precise. *See id.*

Furthermore, the September 25, 2020 preliminary injunction requires the parties to submit briefs over a supplemental guidance document which, when finalized (with the approval of the Southern District of New York) will be distributed to Postal Service managerial staff. *See Jones v. USPS*, 20-cv-6516, ECF No. 57 ¶¶ 7-8 (S.D.N.Y. Sept. 25, 2020). The Court should clarify that its incorporation of the September 25 *Jones* injunction does not require the parties here to craft

another, duplicative supplemental guidance document. For the reasons set forth above, additional guidance would be both duplicative and potentially confusing to Postal Service employees.

V. **Conclusion.**

Accordingly, the Court should clarify that: **(i)** paragraphs 4(b), 4(c), and 4(d) of the preliminary injunction do not compel any further affirmative communication or conduct on part of USPS, but rather require that USPS abide by the policies set forth in the Clarifying Operational Instructions (Ex. A), the September 24 Election Mail Stand-Up Talk (Ex. B), and the September 25 Election Mail Resources memorandum (Ex. C), and **(ii)** paragraph 1 of the preliminary injunction requires the Postal Service to comply with the terms of the September 25, 2020 *Jones* injunction as subsequently modified by the Southern District of New York, and does not require the parties to construct a new supplemental guidance document. Absent clarification on these issues, in order to ensure that the Postal Service is in compliance with the injunction and can effectively carry out its mission, the Postal Service would need to consider seeking a stay of those obligations pending appeal to the Third Circuit. Given the time-sensitive nature of the preliminary injunction, and the requested clarifications, Defendants respectfully request that the Court hold a teleconference as soon as practicable.

Dated: October 5, 2020

    Respectfully submitted,

    JOHN V. COGHLAN
    Assistant Attorney General

    ERIC WOMACK
    Assistant Branch Director, Federal Programs Branch

    */s/* Kuntal Cholera
    KUNTAL V. CHOLERA

Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
kuntal.cholera@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

                        */s/* Kuntal Cholera

                        Kuntal V. Cholera
                        United States Department of Justice
                        Civil Division, Federal Programs Branch
                        1100 L Street, NW
                        Washington, D.C. 20005

                        Attorney for Defendants