

**Josh Shapiro**
Attorney General

Commonwealth of Pennsylvania
Office of Attorney General
Harrisburg, PA 17120

1600 Arch St.
Suite 300
Philadelphia, PA 19103
(215) 560-2402

October 19, 2020

The Honorable Gerald A. McHugh
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 9613
Philadelphia, PA 19106

*By Electronic Filing*

      Re: *Pennsylvania et al. v. DeJoy et al.*, No. 2:20-cv-04096-GAM

Dear Judge McHugh:

      Plaintiffs respectfully submit this letter in response to Defendants' most recent submission of performance metrics and additional material. *See* ECF No. 76. The data submitted by Defendants shows that, three weeks after their recent service changes were first enjoined, and more than a week after this Court's injunction was entered, the Postal Service's performance levels remained well below where they were before those changes were first implemented. In fact, the most recent data reflects that performance levels are more than five percentage points below where they were before the enjoined changes were implemented in July, and they continue to be lower than at any point in 2020 before their implementation. *See* ECF No. 76-3, at 8.[1] And in the Eastern Region, the situation is even worse: first-class on-time performance declined from 84.81 percent to 83.72 percent between the weeks of September 26 and October 3; in the Philadelphia Metro Region, it declined from 83.04 percent to 79.67 percent—the lowest in the Eastern Region. *Id.* at 10, 25. Yet Defendants apparently believe these results are a success: in their submission, the Postal Service praises itself for "effectively maintain[ing] service performance," heralding a national increase in first class performance of only 0.18 percent. ECF No. 76-3, at 64.

      The same filing shows that the numbers of late and extra trips remain well below their averages before the July 2020 operational changes. Prior to these changes, the Postal Service was averaging 4193 late trips and 2260 extra trips every day. USPS, *Congressional Briefing, Transportation & Service Performance Updates* 5-6 (Aug. 31, 2020) (Exh. 16, ECF No. 18-4). After implementation of the initiative in early July, the averages dropped to 1147 late and 606 extra trips every day. *Id.* For the first half of October, they increased only marginally, to 1591 late trips and 772 extra trips. *See* Exh. B, ECF No. 76-2. To be clear, additional late and extra

---

[1] Page numbers refer to the full PDF filed with the Court as Exhibit C. *See* ECF No. 76-3.

trips are not, in and of themselves, Plaintiffs' goal, and the number of late and extra trips would be of no concern if Defendants had restored service performance to its pre-July 2020 levels. But they have not: instead, service performance is more than five percentage points below early July 2020 levels and more than ten points below the 2020 target level of 96.5 percent. ECF No. 76-3, at 8. And late and extra trip numbers remain low despite Defendants' reassurance to this Court and the public that, effective October 1, "[e]xtra transportation resources are authorized and instructed to be used to ensure that Election Mail reaches its intended destination in a timely manner." Memo from Kristin A. Seaver & David E. Williams, *Additional Resources for Election Mail Beginning October 1* (Sept. 25, 2020) (ECF No. 66-3).

The data also shows that USPS plants and delivery units are not clearing all Election Mail every day. *See* ECF No. 76-3, at 72. USPS uses the all-clear reporting process to "ensure that all Election Mail is accounted for within the system." *Id.* at 3. As described by Defendants:

> In the all clear process, in-plant support personnel in processing or delivery units use a checklist to confirm that mail scheduled or "committed" to go out that day has gone out, and anything committed for the next day is at the front of the line. Personnel conducting all clears consult Election Mail logs, and also check all locations within the facility (*e.g.*, processing equipment) to ensure that all pieces of Election Mail in the facility's possession are in the right location. . . . Each USPS processing plant, delivery unit, and reporting retail unit is required to certify, through an online system, its all clear performance every day. . . . In these reports, the "Total Count" column totals the number of facility reports expected each week (in other words, it reflects the number of facilities multiplied by seven); "No Response" reflects how many expected reports were not submitted; and "Non-Compliant" indicates that a facility did not clear all of its Election Mail that day.

*Id*.

All-clears compliance should be at 100 percent: every piece of Election Mail should move through every mail processing facility or delivery unit every day, and every USPS facility should be submitting complete reports every day. Instead, compliance for processing facilities is below 100 percent, with one division as low as 85 percent, while hundreds of delivery units are not filing reports, filing incomplete reports, or failing to clear all mail every day. *Id.* at 72. And all-clear reports are just one piece; as the USPS Office of Inspector General explained in its August 2020 audit report, "ensuring a facility is clear of Election and Political Mail can be supported by the timely and accurate completion of the Election and Political Mail Audit Checklist, the Operational Clean Sweep Search Checklist, and Election and Political Mail Logs." USPS Office of Inspector General, *Processing Readiness of Election and Political Mail During the 2020 General Elections* 15 (Aug. 31, 2020) (ECF No. 18-4, Exh. 19).

Plaintiffs sought a preliminary injunction of Defendants' service changes to return postal service to the status quo ante. In opposing Plaintiffs' motion, Defendants claimed that "service performance is rapidly returning to early July levels." ECF No. 37, at 22. That assertion was

inaccurate at the time, and, as Defendants' most recent submission shows, it continues to be inaccurate. Despite being subject to multiple injunctions, Defendants have not improved their service performance to what it was in early July.

In light of these developments, Plaintiffs submit that the appointment of an independent monitor, particularly one with extensive experience as the Postal Service's Inspector General, would help ensure that Defendants comply with their commitment to prioritize Election Mail and other aspects of this Court's injunction. Defendants' opposition to the appointment of a monitor seems premised on the notion that this case will go away after Election Day. But it will not: the Court's injunction does not expire on November 3, and Plaintiffs intend to press ahead and seek a final judgment on the merits. And the fact that two other courts declined to appoint a monitor has little relevance: both cases challenged the USPS's recent decisions only insofar as they impacted the 2020 election, and plaintiffs in neither case actually proposed a specific monitor to the court, much less one with experience of the monitor Plaintiffs in this case have proposed.[2]

Defendants' most recent filing confirms that an independent monitor is necessary to ensure the Postal Service's compliance with this Court's injunction. Plaintiffs therefore respectfully request that the Court appoint David Williams as an independent monitor.

Respectfully submitted,

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

/s *Michael J. Fischer*
MICHAEL J. FISCHER (Pa. Bar. No. 322311)
Chief Deputy Attorney General
AIMEE D. THOMSON (Pa. Bar. No. 326328)
RYAN B. SMITH (Pa. Bar. No. 324643)
JACOB B. BOYER (Pa. Bar. No. 324396)
Deputy Attorneys General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-2171
mfischer@attorneygeneral.gov
*Attorneys for Plaintiffs*

cc (by ECF):   Counsel of Record

---

[2] In *Jones*, plaintiffs suggested that the court "may want to consider whether some kind of independent monitor is necessary to ensure service standards do not continue to drop" without further explanation. *Jones*, ECF No. 73, at 3. And the *Richardson* plaintiffs requested a monitor as part of their motion for a preliminary injunction. *Richardson*, ECF No. 65 at 15.