UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, STATE OF CALIFORNIA, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, and STATE OF NORTH CAROLINA,<br><br>Plaintiffs,<br><br>v.<br><br>LOUIS DeJOY, *in his official capacity as United States Postmaster General*; RON A. BLOOM, *in his official capacity as Chairman of the Postal Service Board of Governors*; and the UNITED STATES POSTAL SERVICE,<br><br>Defendants. | No. 2:20-cv-4096 |

**RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR AMEND THE PRELIMINARY INJUNCTION**

Plaintiffs respectfully submit this memorandum in response to defendants' Motion for Clarification or, in the Alternative, to Modify the Preliminary Injunction. *See* ECF 116 (May 12, 2021). Defendants' motion should be denied.

**INTRODUCTION**

Last fall, this Court entered a preliminary injunction requiring the Postal Service to roll back a number of policy changes it had implemented in July 2020, many of which related to the use of so-called late and extra trips. *See* ECF 63 (Sept. 28, 2020) (Order); ECF 62 (Sept. 28, 2020) (Opinion); *see also* ECF 70 (Oct. 9, 2020) (Order on Motion to Clarify). Those changes, which this Court found were not submitted to the Postal Regulatory Commission as required by

law,[1] had a disastrous effect on the Postal Service's performance. As this Court previously found, service performance for first-class mail "dropped precipitously" following the implementation of these changes, ultimately reaching a level "far lower than at any other time during the pandemic." ECF 70, at 4. This Court's injunction made clear that defendants were prohibited from further implementing their initiative to eliminate the use of on late and extra trips, among other changes.

Now, more than seven months later, and on the eve of summary judgment briefing, defendants seek to modify or clarify this Court's preliminary injunction to allow them to further reduce their use of extra trips. But while defendants' motion argues that the requested changes are limited in scope, the relief they seek is actually quite broad. And defendants have not provided this Court nor plaintiffs with sufficient information to determine the real effect of these proposed changes. Indeed, notwithstanding defendants' representations to the contrary, it appears that the requested changed could affect a significant volume of mail. And, as this Court has recognized, delays in mail lead to real harm: medication can arrive late; government benefits can be delayed; and important legal notices can fail to arrive on time. *See* ECF 62, at 74–75 (describing plaintiffs' declarations). Unless and until defendants provide adequate information establishing that their proposal would not negatively impact service performance, their motion should be denied.

## DISCUSSION

### I. Defendants' Motion Is Untimely

Although styled as a motion to clarify or amend, the relief defendants seek is a substantive modification of this Court's injunction. Specifically, defendants seek authorization to deny

---

[1] *See* ECF 70, at 77 (finding likelihood of success on this issue).

requests for extra trips where either 1) the extra trip would not be "service responsive"; or 2) the extra trip would operate at less than 15 percent of the truck's capacity. Neither this Court's injunction nor its subsequent modification of that injunction contained such exceptions.[2]

In this Circuit, "[m]odification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *Favia v. Indiana Univ. of Pennsylvania*, 7 F.3d 332, 337 (3d Cir. 1993). Absent such a change in circumstances, any such motion to modify should instead be treated as a motion for reconsideration under Rule 59(e). *See id.* at 337–38.[3] Here, of course, any motion under Rule 59(e) (which must be filed within 28 days) or a motion for reconsideration filed under Local Rule 7.1(g) (which must be filed within 14 days) would be untimely.

Defendants have not pointed to a "change in circumstances … that would render the continuance of the injunction in its original form inequitable." To the contrary, the only "change" referenced in defendants' memorandum is their own desire to reduce their use of extra trips under certain circumstances. As a result, their request should be treated as an untimely motion for reconsideration and be denied.

---

[2] Defendants' motion makes clear that the changes stem from an initiative implemented in April of this year. However, as discussed below, the policies followed during the April initiative differ in significant ways from the relief sought by defendants' motion.

[3] The *Favia* court observed: "When a district court enters an order granting preliminary injunctive relief, parties who take exception to its terms must either file a motion for reconsideration in the district court within ten days under Rule 59(e), bring an interlocutory appeal from that order under 28 U.S.C. § 1292(a)(1), or wait until the preliminary injunction becomes final and then appeal." 7 F.3d at 337–38.

## II. Defendants Have Not Adequately Justified Their Requested Change

Defendants seek two exceptions to this Court's preliminary injunction relating to the use of extra trips. Neither exception is justified based on the facts presented in their motion.

First, defendants ask to be permitted to deny requests for extra trips that are not "service responsive." According to defendants' explanation, an extra trip is not "service responsive" if it would not be decisive as to whether the Postal Service meets its service standards with respect to any of the mail involved.[4] So once mail is delayed such that it can no longer arrive within the relevant service standard, no effort to make that mail less late would be considered "service responsive." And, despite the injunctions entered by this Court and other courts, a significant volume of mail continues to fail to arrive within service standards. For instance, for the first six weeks of 2021, the Postal Service reported that more than 40% of the first-class mail delivered in the Philadelphia Metropolitan Region did not arrive within its designated service standard. *See* Exh. A. So any effort to move this mail faster once it was already late would not be considered "service responsive," potentially implicating an enormous quantity of letters.

In their motion (at 7), defendants analogize their request to the example of an air traveler who misses her first of two flights, arguing that it would make no sense to schedule an additional flight for her if it would not get her to her final definition any faster. Plaintiffs certainly agree, and would have no objection if defendants' request were limited to such situations. But defendants' request goes further: it suggests that it makes no difference whether the traveler gets

---

[4] Defendants' narrow definition of "service responsive" is difficult to reconcile with the Postal Service's own reporting. For instance, USPS regularly tracks "Service Variance"—that is, what percentage of a given class of mail arrives within the service standard plus one day, the standard plus two days, etc. *See, e.g.*, *Service Performance Results*, https://about.usps.com/what/performance/service-performance/. So the Postal Service recognizes that it matters how late the mail is, not just whether it is late at all.

4

to her final destination later the same day, the next day, or even the next week—she will be late no matter what. But nowhere in their motion do defendants justify or explain this "late is late" philosophy. To the contrary, they argue (at 7) that "there would be no benefit" to authorizing extra trips under such circumstances. But to the Postal Service's customers, there is a great benefit to receiving a package or letter only one day late, rather than one week or even one month late. Any justification for modifying the injunction that ignores this distinction should be rejected.

Defendants further seek authorization to decline to run extra trips where "the volume of mail for which an extra trip is requested is less than 15 percent of the truck's full capacity." ECF 116-1, at 8 (quoting Supp. Randel Dec. ¶ 14). While their motion further alleges (at 7) that such trips would be denied only when the costs of running them is "extraordinarily high," nothing in the proposed order reflects such a limitation. And in their motion, defendants have presented no explanation as to what such a policy would mean in practice. For instance, there is no explanation offered as to how 15 percent was identified as the benchmark. Defendants have acknowledged that they have no data as to how many trucks are less than 15 percent full, yet claim (at 8) that the number of extra trips denied would only be a "very small percentage." They similarly did not track such information during the April initiative, which apparently did not use the 15 percent threshold regardless. Moreover, there is no explanation of how the capacity of a truck is determined or even what size truck will be used as the baseline.[5] However, the one example cited from the April initiative suggests that 15 percent of a truck's capacity could

---

[5] Given that the program seems to exclusively involve contractors, it seems reasonable to assume that it will involve trucks of various sizes.

involve more than 1000 packages.[6] Moreover, defendants have represented to plaintiffs that they do not intend to collect data specific to this initiative to determine whether the denial of extra trips would impact service performance, yet claim (at 13) the initiative will have "marginal, if any, impact on service." *See* Exh. B (emails among counsel) ("The Postal Service does not believe that providing custom data specific to this process is appropriate.").

Defendants claim (at 8) that the week-long implementation of the Postal Service's new process for vendor selection in April demonstrates that only "a very small percentage of extra trip requests will be denied due to this threshold." But as far as defendants have represented, that week-long implementation was not accompanied by a directive to deny *all* requests for extra trips if either 1) the extra trip would not be service responsive; or 2) the extra trip would operate at less than 15 percent of the truck's capacity. It is therefore impossible to know how many of the 724 extra trips that were approved during that week would have been denied under defendants' new directive.

Absent such information, there is no basis for providing the modification defendants seek. The overriding purpose of this Court's injunction was to require the Postal Service to utilize late and extra trips to the same extent it did so prior to the disastrous July 2020 initiative. So without any explanation of how often the Postal Service ran extra trips that would be considered less than 15 percent full under the criteria it plans to use for this initiative, it is impossible to determine the impact on service performance. Thus, unless and until defendants provide significantly more information about this request, it should be denied.

---

[6] Defendants cite an extra trip request involving 9 bins containing 1530 packages, which were to be transported on a truck that normally holds 48 bins. That request was denied as part of the April initiative. *See* ECF 115-1, at 6–7 (Decl. of Earl Randel) (Apr. 30, 2021). Extrapolating from these numbers suggests that a similar truck carrying 15 percent of its normal bin capacity would have more than 1000 packages.

## CONCLUSION

Defendants' motion to clarify or modify this Court's preliminary injunction should be denied.

May 26, 2021

Respectfully submitted,

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

*/s Michael J. Fischer*
MICHAEL J. FISCHER (Pa. Bar. No. 322311)
Chief Deputy Attorney General
AIMEE D. THOMSON (Pa. Bar. No. 326328)
RYAN B. SMITH (Pa. Bar. No. 324643)
JACOB B. BOYER (Pa. Bar. No. 324396)
Deputy Attorneys General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 374-2787
athomson@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of Pennsylvania*

ROB BONTA
Attorney General
State of California
MICHAEL NEWMAN
Senior Assistant Attorney General
SUSAN SLAGER
Supervising Deputy Attorney General
MARISSA MALOUFF
ANTHONY O'BRIEN*
JASLEEN SINGH*
LISA C. EHRLICH*
Deputy Attorneys General
Office of the Attorney General for the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3489
Lisa.Ehrlich@doj.ca.gov
*Attorneys for Plaintiff State of California*

KATHLEEN JENNINGS
Attorney General
State of Delaware
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
JILLIAN A. LAZAR
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
Vanessa.Kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

KARL A. RACINE
Attorney General
District of Columbia
KATHLEEN KONOPKA*
Deputy Attorney General, Public Advocacy Division
BRENDAN B. DOWNES*
Assistant Attorney General, Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 6th St. NW
Washington, DC 20001
(202) 724-6610
Kathleen.Konopka@dc.gov
*Attorneys for Plaintiff District of Columbia*

AARON M. FREY
Attorney General
State of Maine
PAUL E. SUITTER*
JASON ANTON**
Assistant Attorneys General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
Paul.Suitter@maine.gov
*Attorneys for Plaintiff State of Maine*

| | |
|---|---|
| MAURA HEALEY<br>Attorney General<br>Commonwealth of Massachusetts<br>DAVID C. KRAVITZ*<br>Deputy State Solicitor<br>Office of Attorney General Maura Healey<br>One Ashburton Place, 20th Floor<br>Boston, MA 02108<br>(617) 963-2427<br>david.kravitz@mass.gov<br>*Attorneys for Plaintiff Commonwealth of Massachusetts* | JOSHUA H. STEIN<br>Attorney General<br>State of North Carolina<br>SRIPRIYA NARASIMHAN**<br>Deputy General Counsel<br>SARAH G. BOYCE*<br>Deputy Solicitor General<br>North Carolina Department of Justice<br>114 W. Edenton Street<br>Raleigh, NC 27603<br>(919) 716-6400<br>snarasimhan@ncdoj.gov<br>*Attorneys for Plaintiff State of North Carolina* |

*Appearing pro hac vice

**Application for admission forthcoming