## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**Commonwealth of Pennsylvania, State of California, State of Delaware, District of Columbia, State of Maine, Commonwealth of Massachussetts, and State of North Carolina**,

Plaintiffs,

v.

**Louis DeJoy, in his official capacity as United States Postmaster General, Robert M. Duncan, in his official capacity as Chairman of the Postal Service Board of Governors, and the United States Postal Service**,

Defendants.

Case No. 20-cv-4096

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, TO MODIFY THE PRELIMINARY INJUNCTION

For decades, the United States Postal Service has relied on its local transportation managers, working in consultation with postal headquarters, to determine in their professional judgment whether it is appropriate to run additional, unscheduled "extra" network trips to transport mail between postal facilities. While that decision is often fact-intensive, there are two circumstances in which the Postal Service has traditionally viewed extra trips as being particularly wasteful: (1) where such a trip would not be "service responsive"—*i.e.*, where the trip would not achieve on-time delivery, and (2) where such a trip would cause significant expense to transport only a small volume of mail. *See* First Randel Decl. ¶¶ 18, 20, ECF No. 115-1. As the Postal Service has explained, it simply "does not have sufficient resources to utilize extra trips in each and every circumstance in which a small volume of mail has not been loaded on the appropriately

1

scheduled trip." *Id.* ¶ 20. Thus, for years the Postal Service transportation managers have reasonably exercised their judgment to decline extra trips in those circumstances. *See id.*

By its terms, the Court's preliminary injunction in this case does not prevent transportation managers from exercising their historical discretion to decide, as part of their day-to-day operational duties, that an extra trip is inappropriate or unwarranted. Rather, it enjoined "continued implementation or enforcement of operational changes announced in July 2020 reflected in the July 10, 2020 'Mandatory Stand-Up Talk: All Employees,'" including a purported requirement that "extra trips are no longer authorized or accepted." *See* Order, ECF No. 63; Mem. Op., at 10, ECF No. 62. It also stated that "[t]ransportation, in the form of late and extra trips is authorized and shall be used while reasonably necessary to meet service standards and service performance targets," while instructing that "[m]anagers shall use their best business judgment to meet service commitments and to not leave mail behind." Order Granting, in Part, Defs.' Mot. to Clarify, ECF No. 70. The Postal Service has complied with that order—and, notably, Plaintiffs have never suggested otherwise. *See generally* Pls.' Resp. to Defs' Motion to Clarify or Amend the Prelim. Inj. ("Pls.' Opp'n), ECF No. 117.

Nor, more to the point, do Plaintiffs identify how declining to authorize extra trips in the two circumstances detailed in Defendants' motion—where an extra trip would not be service responsive or where the extra trip would be mostly empty (*i.e.*, less than 15% full)—would violate the preliminary injunction. Plaintiffs instead offer two objections based upon the assumption that the injunction is much broader than its actual terms: (1) that Defendants' motion should be considered a motion to modify the preliminary injunction, which would be untimely absent changed circumstances; and (2) that Defendants have not explained the potential impact of the proposed initiative vis-à-vis delayed mail. Neither objection has merit.

First, Defendants do not believe that the relevant actions implicate the injunction at all, and have therefore sought clarification out of an abundance of caution as the primary (and proper) form of relief, and, notably, Plaintiffs do not attempt to demonstrate otherwise. Defendants' request to amend the injunction was an alternative request out of deference to this Court's understanding of its own order—and even there, it was based on a significant changed circumstance, notably the passing of the 2020 election that was the impetus for the injunction, as well as the operational need for a limited process that is fundamentally different than the purported ban on late and extra trips that this Court enjoined. Plaintiffs never explain how this development would not constitute a changed circumstance. The reference to an untimely motion for modification is thus a nonsequitor.

And second, Defendants have explained that application of the two criteria would have marginal, if any, impact on service—and have done so by providing real-world data indicating that only a small handful of trips, containing a small percentage of their full loads of mail, would be implicated. Accordingly, absent any explanation of how Defendants' proposal would violate the pending injunction, this Court should grant Defendants' motion.

## ARGUMENT

I.     **Defendants' Motion for Clarification, or in the Alternative, Amendment, of this Court's Preliminary Injunction Is Timely**.

Plaintiffs' primary argument is that Defendants' motion for clarification and/or modification of the preliminary injunction is untimely. They say, correctly, that in the Third Circuit, "[m]odification of an injunction is only proper when there has been a change in circumstances between the entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993); *see also* Pls.' Opp'n at 3. Plaintiffs argue that "[d]efendants have not pointed to a 'change in circumstances'" meeting this standard, and must satisfy the 28 or 14

3

day requirements for a motion for reconsideration under Fed. R. Civ. P. 59(e) or Local Rule 7.1(g).
*See* Pls.' Opp'n at 3.

In making this argument, Plaintiffs ignore the actual content of Defendants' motion.  First,
Defendants' motion is primarily a motion for *clarification*—and a motion to "modify" an
injunction is distinct from one which seeks to "clarify" the existing terms of said order.  *See, e.g.*,
*Am. Bd. of Surgery, Inc. v. Lasko*, 532 F. App'x 66, 69 (3d Cir. 2013) (citing *Entegris, Inc. v. Pall
Corp.*, 490 F.3d 1340, 1345 (Fed. Cir. 2007)).  Here, Defendants have explained that their
"proposed actions would be in compliance with this Court's order," Defs.' Mem. at 11, and are
merely seeking *ex ante* confirmation of that fact.  This Court's order stated, for example, that
"[t]ransportation, in the form of late and extra trips is authorized and shall be used *where
reasonably necessary to meet service standards and service performance targets*."  Order,
Granting, in Part, Defendants' Motion to Clarify (Oct. 9, 2020), ECF No. 70 (emphasis added).
This necessarily implies that extra trips need *not* be used where they would not increase on-time
performance.  *See* Defs.' Mem. at 11.  Similarly, the injunction also stated that "[m]anagers should
use their best business judgment to meet service commitments and to not leave mail behind," *id.*,
which again indicates that managers are not required to authorize extra trips merely because they
would allow a single piece of mail to meet a service standard, but are permitted to use their expert
judgment to make necessary determinations about when the cost of an extra trip justifies the need.
Indeed, this Court's preliminary injunction was primarily focused on enjoining purported
operational changes last July that would *ban* late and extra trips under nearly all circumstances.
*See* Order, at 1-2, ECF No. 63.  Plaintiffs themselves understand the injunction to have this effect.
*See, e.g.*, Pls.' Opp'n at 2 ("This Court's injunction made clear that defendants were prohibited
from further implementing their initiative to eliminate the use of on late and extra trips, among

other changes."). The injunction did not *require* that extra trips be run under any and all circumstances—an order that would have changed the long-standing practices of the Postal Service, rather than being limited to the July 2020-specific practices that were identified in the injunction.

Plaintiffs never even attempt to explain how the text of the Court's operative preliminary injunction precludes the actions that Defendants seek to take in the best interests of the Postal Service. Plaintiffs have thus waived any claim that Defendants' motion fails to seek clarification (as opposed to amendment) of the preliminary injunction. *See, e.g.*, *Greenwood Partners, L.P. v. Cimnet, Inc.*, 2003 WL 22238981, at *2 (E.D. Pa. Sept. 26, 2003) (where a party failed to adequately brief an issue, it consequently waived that claim) (citing *Nat'l R.R. Passenger Corp. v. Pa. Public Utility Com'n*, 342 F.3d 242 (3d Cir. 2003)).

But—even assuming that Defendants' motion is best understood only as a motion to amend or modify the preliminary injunction—Defendants have demonstrated an adequate change in circumstances. *Favia*, the case on which Plaintiffs exclusively rely, made clear that the "change in circumstances" rationale for justifying modification of an injunction is mainly intended to prevent a "motion for reconsideration disguised as a motion to modify." *Favia*, 7 F.3d at 337; *see also id.* at 338 ("A motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order"). Indeed, a change in status of the parties can justify modification of the injunction. *See id.* at 339.

Plaintiffs state that "the only 'change' referenced in defendants' memorandum is their own desire to reduce their use of extra trips under certain circumstances." Pls.' Opp'n at 2. That is wrong. Rather, as Defendants previously explained, "[t]he Court enjoined the purported extra trip policy in the lead-up to the November 2020 election at least in part based on the irreparable harm

that might occur in the context of the election and the pandemic which was likely to cause an increase in votes by mail.  But the election has come and gone, and Plaintiffs cannot assert that [they] will suffer irreparable harm if the Postal Service implements the limited extra trip practices described above."  Defs.' Mem. at 13; *see also* Mem. Op., at 7 ("The declines in service that resulted from the initiatives have not been fully remedied and pose a threat to the operation of the November 2020 elections."), ECF No. 62; Mem. Op., at 44 (discussing harms to Plaintiff "with regard to the demonstrable harms related to their status as users of the mail *vis a vis* the upcoming election").  Moreover, Plaintiffs ignore the context of this motion: the Court enjoined a purported ban on late and extra trips—an injunction with which the Postal Service has and continues to comply.  The Postal Service is seeking clarity from the Court, through clarification or modification, that the limited process it seeks to implement is outside the scope of the injunction, as it is designed to better manage the Postal Service's extra transportation and scarce resources.  *See* Third Randel Dec. ¶ 14 (noting that "given the limited number of drivers and tractor-trailers that are available, it would be operationally irresponsible to run each and every trip with such a small volume of mail because the driver and truck could be needed for a trip delivering a substantially larger volume of mail"); *id.* ¶ 15 (noting that in FY 2021, extra trips cost the Postal Service over $415 million, while "[t]he Postal Service is statutorily required to manage its operations in an efficient and cost-effective manner, as its operations are funded through its revenue, as opposed to appropriations or tax dollars").  The landscape is materially different in June 2021 than it was in July 2020.  Plaintiffs have made no effort to explain why these changes in circumstances would not justify the limited motion Defendants put forward here; indeed, they fail completely to address it.

II.        **Defendants' Motion Provides Extensive Detail About the Clarification They Seek**.

Plaintiffs next suggest that Defendants have not put forward facts sufficient to justify their motion, *i.e.*, to establish that there would not be a significant impact on service.  *See* Pls.' Opp'n at 4-6.  But this is not so.

Defendants first seek clarification that they may decline to authorize extra trips where those trips are not "service responsive," *i.e.*, if running the extra trip would not allow the Postal Service to meet the service performance target for that mail.  *See* Defs.' Mem. at 6.  Plaintiffs initially say that they have no objection to denying an extra trip if it would not result in the mail getting to its "final [destination] any faster," Pls.' Opp'n at 4, but then construct a strawman, saying that if Defendants' motion were granted, the Postal Service could deliver a package or letter "one week or even one month late," as long as running the extra trip would not result in that piece of mail being timely delivered.  *Id.* at 5.

That is, of course, not the Postal Service's intent.  Declining to authorize an extra trip that would not be service responsive would not result in mail arriving at its destination any later than it would have if the extra trip had been authorized.  *See* Third Randel Decl. ¶¶ 6-7.  If a Postal Service employee declined to approve an extra trip that would not be service responsive, the Postal Service would put the mail at issue on the next regularly scheduled trip.  *Id.* ¶ 7.  The mail would not arrive at its destination any later than if the Postal Service had run an extra trip.  *Id.* ¶ 6.  If there is insufficient capacity on the next regularly scheduled trip, and no reasonable means of delivering the mail only one day later, then the Postal Service would run the extra trip, regardless of capacity.  *Id.* ¶ 7.  "In other words, denying a trip as not service responsive *would not result* in any mail arriving later than it would if the Postal Service had run an extra trip."  *Id.* ¶ 6 (emphasis added).

Next, Defendants seek clarification that the injunction does not prohibit the Postal Service from allowing employees to decline extra trips where the volume of mail to be transported is less than 15 percent of the tractor-trailer's full capacity.  In other words, it would be permitted to deny an extra trip where there would be no justification for the expense and opportunity cost of running a truck that was mostly empty.  *See, e.g.,* Defs.' Mem. at 7-9.  Plaintiffs do not seriously question the propriety of denying such trips, instead, they claim that they have not received sufficient facts justifying "what such a policy would mean in practice."  Pls.' Opp'n at 5.  But this is not accurate; rather the evidence indicates this proposal would have a marginal, if any, impact on service.

For starters, Defendants note that during a pilot program in April 2021, out of the 736 trips entered into the system, only one trip was denied based on low-volume (and even that was based on a 20% threshold not the 15% threshold proposed here).  *See, e.g.* Second Randel Dec. ¶¶ 15-16.  Plaintiffs attempt to brush aside this relevant fact, arguing that the pilot "was not accompanied by a directive to deny *all* requests for extra trip . . . [if] the extra trip would operate at less than 15 percent of the truck's capacity."  Pls.' Opp'n at 6 (emphasis added).  But the Postal Service's proposed clarification would not be accompanied by such a directive either – rather, the motion would clarify that the Postal Service would be authorized to deny such a trip if appropriate to do so, not required to do so.  Defs.' Mem. at 8.  Indeed, more recent data – submitted by the Postal Service to the PRC – indicates that of 365 network trips that were recently tracked and which could be subject to this policy, only one trip had a load that would have triggered the 15 percent threshold caused by this criteria, and that load had approximately 1680 mail pieces.[1]  *See also* Third Randel

---

[1] On March 29, 2021, the PRC, as part of its Fiscal Year 2020 Annual Compliance Determination, requested that the Postal Service "file with the Commission a service performance impact analysis for initiatives that are planned for implementation on or before . . . March 29, 2022 . . . and are reasonably foreseeable to impact service performance results."  *See* Response of U.S. Postal Service to Commission Request for Additional Information at 1 (June 4, 2021),

Dec. ¶ 12.  Nor would this account for the fact that where the mail volume is less than 15%, the Postal Service will attempt to identify alternative trips that have capacity to transport the mail to its destination or other means of ensuring the mail timely arrives at its destination.  Third Randel Dec. ¶¶ 13.  In short, there is no indication that Defendants' proposed clarification would render a material effect (or even any effect) on overall service performance, particularly given the thousands of trips and millions of pieces of mail that are moved each week.  Rather, although not relevant to the primary question of whether the proposed criteria is within the scope of this Court's orders, the Postal Service's evidence indicates just the opposite.

Finally, Plaintiffs raise several questions about the size and capacity of the trucks,[2] and the basis for the 15% threshold.  *See* Pls.' Opp'n at 5-6.  With respect to the latter question, the 15% threshold was developed based on the operational experience of the Postal Service's Headquarters transportation management team.  They estimate that the current average utilization of truck capacity for network trucks is approximately 45%, Third Randel Dec. ¶ 16, and that trips within

---

https://www.prc.gov/docs/118/118333/USPS%20Resp%20to%20ACD%20Request%206-4-21.pdf. On June 4, 2021, in an abundance of caution, the Postal Service notified the PRC of the two new processes at issue in this motion for clarification, even though the Postal Service "do[es] not anticipate any measurable impact on overall service performance as a result of the new process[es]." *Id.* Thus, although the new processes do not implicate Section 3661(b) and the Postal Service has not requested an advisory opinion from the PRC, the PRC is aware of the processes and the pending motion for clarification in this case. *Id.* at 4 n.3.

As part of that submission, the Postal Service indicated that in the first week it tracked extra trip requests, it received 365 such requests, of which only five were filed at less than 15 percent capacity, and of these, three were moving Mail Processing Equipment, not mail, one was moving mail that was already reported as delayed, and only one was operating at 14% of the truck's capacity, and was run to move six containers of packages comprising approximately 1680 mail pieces. *See id.* at 6.

[2] While Plaintiffs assume that the Postal Service's use of network trips "will involve trucks of various sizes," Pls.' Opp'n at 5 n.5, in reality, only one type of vehicle, tractor-trailers, are "used almost exclusively in HCR network transportation."  Third Randel Dec. ¶ 3.

the HCR network transportation do not often have a utilization rate that is lower than 20%, *id.* ¶ 10.  (And as discussed above, the available evidence bears out that estimate.)  Postal Service transportation managers thus decided to set the criteria at 15% to further minimize the number of trips that could be denied on the basis of low-capacity.  *Id.* ¶ 10.  Whether the capacity is less than 15%, in turn, depends on the number and sizes of containers containing mail that are loaded onto the truck; depending on the size of the containers, a tractor-trailer can carry between 2 and 48 containers.  *Id.* ¶¶ 9, 11 (discussing size and capacity of containers).

Accordingly, Plaintiffs have not called into question the Postal Service's evidence that the proposed initiative would not have a significant impact on service.

## CONCLUSION

For the aforementioned reasons, and those set out in Defendants' opening brief, this Court should grant Defendants' motion to clarify or amend the preliminary injunction.

Dated:  June 9, 2021                    Respectfully submitted,

BRIAN M. BOYTON
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Kuntal V. Cholera*
KUNTAL V. CHOLERA
JOSEPH E. BORSON
ALEXIS J. ECHOLS
JOHN J. ROBINSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 305-8645
kuntal.cholera@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

<div style="margin-left: 40%;">

<u>/s/ Kuntal V. Cholera</u>

Kuntal V. Cholera
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

Attorney for Defendants

</div>