**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA, STATE
OF CALIFORNIA, STATE OF DELAWARE,
DISTRICT OF COLUMBIA, STATE OF MAINE,
COMMONWEALTH OF MASSACHUSETTS, and
STATE OF NORTH CAROLINA,

                         Plaintiffs,

        v.

LOUIS DeJOY, *in his official capacity as United States*
*Postmaster General*; RON A. BLOOM, *in his official*
*capacity as Chairman of the Postal Service Board of*
*Governors*; and the UNITED STATES POSTAL
SERVICE,

                         Defendants.

**No. 2:20-cv-4096**

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      This Court has jurisdiction.................................................................................... 4

        A.      The Plaintiff States have standing............................................................ 4

        B.      Congress did not preclude judicial review of Count I or Count II.......... 8

                1.      The Court has jurisdiction for Count I........................................ 9

                        a.      It is not "fairly discernible" that Congress meant 39 U.S.C.
                                § 3662 to be an exclusive review scheme. .................................. 10

                        b.      Even if 39 U.S.C. § 3662 is exclusive, the States' Count I
                                does not fall within its scope......................................................... 14

                2.      The Court has jurisdiction for Count II...................................... 16

II.     Under any standard, the no late and extra trip initiative was a change in the nature
        of postal services, exceeding the Postal Service's authority under 39 U.S.C.
        § 3661 (Count I)................................................................................................... 18

III.    Under any standard, the 2020 cost-cutting policy, effectuated by numerous
        operational strategies, violated nondiscretionary statutory obligations under 39
        U.S.C. § 101(e) and § 403 (Count II). ................................................................ 25

IV.     The Court should enter the States' proposed remedy. ........................................ 32

CONCLUSION.............................................................................................................. 39

# TABLE OF AUTHORITIES

**Cases**

*Adorers of the Blood of Christ v. Fed. Energy Regul. Comm'n*, 897 F.3d 187 (3d Cir. 2018) ................................................................................ 12, 14, 15

*Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166 (D.C. Cir. 2003)........................................ 18, 20

*Air Courier Conf. of Am./Int'l Comm. v. USPS*, 959 F.2d 1213 (3d Cir. 1992) .......................... 20

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)........................................................ 6, 7, 8

*Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) ................................................ 19

*Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 220 F. Supp. 3d 27 (D.D.C. 2016)................................................................................ 12, 13

*Bastardo-Vale v. Att'y Gen. United States*, 934 F.3d 255 (3d Cir. 2019)................................... 10

*Block v. Community Nutrition Institue*, 467 U.S. 340 (1984)....................................................... 17

*Boarhead Corp. v. Erickson*, 923 F.2d 1011 (3d Cir. 1991)........................................................ 18

*Buchanan v. USPS*, 508 F.2d 259 (5th Cir. 1975) ...................................................... 13, 14, 21, 23

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)............................................. 18

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................ 6

*Common Cause v. NRC*, 674 F.2d 921 (D.C. Cir.1982)................................................................. 37

*Culver v. U.S. Dep't of Lab. Occupational Safety & Health Admin.*, 248 F. App'x 403 (3d Cir. 2007).................................................................................. 11

*Duncan v. Walker*, 533 U.S. 167 (2001)...................................................................................... 28

*Eagle Tr. Fund v. USPS*, 811 F. App'x 669 (D.C. Cir. 2020) ...................................................... 20

*EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529 (2d Cir. 1996) ................................................. 38

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)........................................................................ 9, 10

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ...................................................................... 26

*Foster v. Pitney Bowes Corp.*, 549 F. App'x 982 (Fed. Cir. 2013) ............................................. 13

*Foster v. Pitney Bowes Inc.*, No. 11-7303, 2012 WL 2997810 (E.D. Pa. July 23, 2012) .......................................................................................... 13

*FTC v. Cephalon, Inc.*, No. 08-2141, 2015 WL 4931442 (E.D. Pa. June 17, 2015) ................... 37

*Gentile v. Sec. & Exch. Comm'n*, 974 F.3d 311 (3d Cir. 2020).................................................. 27

*Gillam v. U.S. Dep't of Agriculture*, 486 F. Supp. 3d 856 (E.D. Pa. 2020)................................. 37

*Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487 (D.C. Cir. 1988) ................................................ 19

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014) .................... 39

*Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020)................................................... 7

*Heckler v. Chaney*, 470 U.S. 821 (1985) .................................................................................... 26

*Hope v. Warden of York Cty. Prison*, 972 F.3d 310 (3d Cir. 2020)............................................. 37

*Jarkesy v. SEC*, 803 F.3d 9 D.C. Cir. 2015) ............................................................................... 15

*Leedom v. Kyne*, 358 U.S. 184 (1958) .................................................................................... 19, 20

*LeMay v. USPS*, 450 F.3d 797 (8th Cir. 2006) ....................................................................... 12, 13

*Lopez v. Davis*, 531 U.S. 230 (2001) ........................................................................................... 10

*Lorillard v. Pons*, 434 U.S. 575 (1978) ....................................................................................... 14

*Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355 (1986)................................................... 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................................................. 4

*Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, No. 20-255, 2021 WL 2557069
   (U.S. June 23, 2021)................................................................................................................ 29

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................................. 8

*Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) .............................................................................. 11

*Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300 (D.C. Cir. 2014) .................................... 18, 20

*N. Air Cargo v. USPS*, 674 F.3d 852 (D.C. Cir. 2012).......................................................... 20, 31

*N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020)................................................. 20

*Nat'l Ass'n of Postal Sup'rs v. USPS*, 602 F.2d 420 (D.C. Cir. 1979)...................... 19, 20, 26, 27

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015) ............................................... 5

*New York v. Trump*, 490 F. Supp. 3d 225 (D.D.C. 2020)...................................................... 10, 16

*Pareja v. Att'y Gen. of U.S.*, 615 F.3d 180 (3d Cir. 2010) ......................................................... 14

*Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833 (E.D. Pa. 2020)................................................ passim

*Pennsylvania v. President*, 930 F.3d 543 (3d Cir. 2019) ............................................... 38

*Perficient, Inc. v. Munley*, 973 F.3d 914 (8th Cir. 2020).............................................. 37

*Prometheus Radio Project v. Fed. Commc'ns Comm'n*, 824 F.3d 33 (3d Cir. 2016) .................................................................................................. 27

*Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) ........................................................ 26

*S. California Edison v. USPS*, 134 F. Supp. 3d 311 (D.D.C. 2015) ............................. 10

*SEC v. Chenery*, 318 U.S. 80 (1943) .......................................................................... 31

*Shelby Res., Inc. v. USPS*, 619 F. Supp. 1546 (S.D.N.Y. 1985)................................... 13

*Smith v. United States*, 508 U.S. 223 (1993) .............................................................. 26

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................ 4

*Tedesco v. USPS*, 553 F. Supp. 1387 (W.D. Pa. 1983)................................................ 13

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994).......................... 9, 10, 18

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) ................................. 20

*United Parcel Serv., Inc. v. USPS*, 604 F.2d 1370 (3d Cir. 1979).................... 20, 21, 22

*United States v. Erika*, 456 U.S. 201 (1982)............................................................... 17

*United States v. Jackson*, 964 F.3d 197 (3d Cir. 2020) ............................................... 28

*United States v. Phillip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) .......... 37, 38

**Statutes**

Postal Accountability and Enhancement Act, Pub. L. 109-435, 120 Stat. 3198 (2006) ..................................................................................................... 14

28 U.S.C. § 1331 ..................................................................................... 9, 20

28 U.S.C. § 1339 ..................................................................................... 9, 20

30 U.S.C. § 815(a) ........................................................................................ 11

39 U.S.C. § 101 ....................................................................... 3, 25, 26, 39

39 U.S.C. § 101(a) ................................................................................. 38

39 U.S.C. § 101(e) ................................................................ passim

39 U.S.C. § 102(5) ........................................................ 16, 21, 22, 28

39 U.S.C. § 3661 ................................................................ passim

39 U.S.C. § 3661(a) ............................................................... 24

39 U.S.C. § 3661(b) .............................................................. passim

39 U.S.C. § 3662 ................................................................ passim

39 U.S.C. § 3662(a) ....................................................... 10, 12, 13, 16

39 U.S.C. § 3662(b) ............................................................ 10, 12

39 U.S.C. § 3662(c) .......................................................... 10, 12, 13

39 U.S.C. § 3662(d) ............................................................... 12

39 U.S.C. § 3663 .................................................................. 12

39 U.S.C. § 3664 .................................................................. 13

39 U.S.C. § 403 ................................................................. passim

39 U.S.C. § 403(a) .............................................................. passim

39 U.S.C. § 403(b) .............................................................. passim

39 U.S.C. § 409(a) ............................................................... 9, 20

5 U.S.C. § 7503 .................................................................. 11

5 U.S.C. § 7503(b)(1) ............................................................. 11

5 U.S.C. § 7503(b)(2) ............................................................. 11

5 U.S.C. § 7503(b)(3) ............................................................. 11

5 U.S.C. § 7503(b)(4) ............................................................. 11

5 U.S.C. § 7503(c) ............................................................... 11

5 U.S.C. § 7513 .................................................................. 11

5 U.S.C. § 7513(b)(1) ............................................................. 11

5 U.S.C. § 7513(b)(2) ............................................................. 11

5 U.S.C. § 7513(b)(3)................................................................................. 11

5 U.S.C. § 7513(b)(4)................................................................................. 11

5 U.S.C. § 7513(d)...................................................................................... 12

5 U.S.C. § 7513(e)...................................................................................... 11

5 U.S.C. § 7701(a)...................................................................................... 10

5 U.S.C. § 7701(g)(1)................................................................................. 12

**Regulations**

39 C.F.R. § 221.3(b) .................................................................................. 23

**Other Authorities**

Defs.' Br. (ECF No. 67), *New York v. Trump*, No. 20-2340 (D.D.C. Oct. 27, 2020 .................. 34

H.R. Rep. 109-66 (2005)............................................................................. 12

Postal Rate Comm'n, *Advisory Opinion Concerning a Proposed Change in the
    Nature of Postal Services*, Docket No. N75-1 (Apr. 22, 1976) ................ 24

Postal Rate Comm'n, *Notice and Order on Complaint Concerning Sunday and
    Holiday Mail Collections*, 66 Fed. Reg. 16,504 (Mar. 26, 2001) ............ 24

Postal Regulatory Comm'n, *Advisory Opinion Concerning a Proposed Change in
    the Nature of Postal Services*, Docket No. N2006-1 (Dec. 19, 2006) ........ 23, 24, 25

Postal Regulatory Comm'n, *Advisory Opinion Concerning the Process for
    Evaluating Closing Stations and Branches*, Docket No. N2009-1 (Mar. 10,
    2010) ...................................................................................................... 22

Postal Regulatory Comm'n, *Advisory Opinion on Elimination of Saturday
    Delivery*, Docket No. N2010-1 (Mar. 24, 2011)....................................... 25

Postal Regulatory Comm'n, *Advisory Opinion on Retail Access Optimization
    Initiative*, Docket No. N2011-1 (Dec. 23, 2011)...................................... 23

*Service Standards for Market-Dominant Mail Products*, 86 Fed. Reg. 21,675
    (Apr. 23, 2021).......................................................................................... 33

# INTRODUCTION

Last year, the Postal Service violated its fundamental obligations to the public. It rolled out a sweeping set of strategies and initiatives to cut costs in the middle of a pandemic without any consideration of the effect those initiatives might have on service and without any plan for communicating those initiatives across its vast network. One such initiative—a sudden directive to eliminate late and extra trips—was a departure from the Postal Service's past practices, which the Postal Service gave neither the public nor the Postal Regulatory Commission an opportunity to comment on before moving forward. The negative consequence of these strategies and initiatives was immediate and drastic, with the harm limited by the series of injunctions eventually imposed on the Postal Service.

The Postal Service does not dispute the key facts that establish these initiatives violated several statutory mandates or the harm they caused. Instead, they offer various iterations of one argument: no one can do anything about it. They make that argument as a threshold matter, contending that States protected by a preliminary injunction since last fall must show a current injury and that this Court does not have jurisdiction over the underlying claims because one claim could have been, and the other claim could not have been, brought before the Postal Regulatory Commission. They make that same argument as to the merits, suggesting that Congress did not mean for the Postal Service's statutory obligations to be enforceable. And they make that argument as to the States' proposed remedy, decrying it as both too specific and insufficiently specific.

The Postal Service has violated its statutory obligations in ways that harm the States— harm that at the time posed an acute risk to the States' administration of an upcoming election, but which was never limited to just elections. Discovery has allowed the States to better articulate what happened last summer—what the Postal Service's strategies and initiatives were,

how they affected Postal Service operations, and why they were implemented. This evidence only confirms this Court's preliminary findings: the Postal Service adopted strategies and initiatives that, in substance and implementation, caused mail delays. And a clearer understanding of the facts only strengthens the States' core legal allegations: these strategies and initiatives exceeded the Postal Service's statutory authority. The Court has jurisdiction to enjoin Postal Service conduct that violates the statutes that ensure the Postal Service operates as a public good and to fashion an appropriate remedy in response. For the reasons that follow, the Court should do so, entering judgment for the States and awarding appropriate relief.

## ARGUMENT

In August 2020, the States sued the Postal Service to enjoin operational policies and changes that were causing mail delays. At the time, available evidence demonstrated that these policies and changes included restrictions on the use of late and extra trips; restrictions on work hours, including overtime; and requirements that letter carriers follow strict start and stop times. *See Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 845-53 (E.D. Pa. 2020). Additional discovery has revealed that these restrictions were part of a broader set of strategies and initiatives—the "do-it-now strategies"—adopted by the Postal Service in June and July 2020 to effectuate its policy of cutting 64 million work hours and shaped in significant part by Postmaster General DeJoy. *See* Pls.' Mem. 12-30.

One initiative was to immediately eliminate late and extra trips, an initiative enforced by a directive that all extra and Postal Service-caused late trips would become unauthorized contractual commitments. Pls.' Mem. 13-17. Implementation of the initiative had a rippling effect, requiring changes to all aspects of Postal Service operations, including how letter carriers collect and deliver mail. Pls.' Mem. 15-21. The initiative upset decades-long practices for receiving, sorting, transporting, and delivering the mail, and contributed to a decline in service

performance. Pls.' Mem. 9, 15-16, 19, 20-21, 30-31. Because the Postal Service did not first

obtain an advisory opinion from the Postal Regulatory Commission, the initiative exceeded the

Postal Service's authority under 39 U.S.C. § 3661 (Count I).

Contrary to the Postal Service's claims about its own operations, *e.g.*, Defs.' Opp'n 19,

59-60, the initiative to eliminate late and extra trips was also one of the many do-it-now

strategies implemented to cut costs, *e.g.*, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Ex. 32) (filed under seal); Pls.' Mem. 47 ("The initiative to eliminate

late and extra trips was part of a larger set of operational strategies—the 'do-it-now' strategies—

to reduce 64 million total work hours during Fiscal Year 2021."). The do-it-now strategies,

including the effort to eliminate late and extra trips, were hastily implemented and poorly

communicated. Pls.' Mem. 13-24. Before implementing these strategies, the Postal Service

neither analyzed the potential impact on Postal Service operations and service performance nor

considered the ongoing pandemic or then-upcoming election. Pls.' Mem. 13-24. The result was

confusion and inconsistent application, which undermined adequate and efficient postal services

and contributed to a decrease in service performance for all mail, including First-Class Mail.

Pls.' Mem. 17-22, 26-29, 30-31. For these reasons, the Postal Service's 2020 cost-cutting policy,

in substance and in implementation, exceeded the Postal Service's authority as defined by 39

U.S.C. § 101 and § 403 (Count II).

As a threshold matter, the Court has jurisdiction to review these claims. Harm caused by

mail delays and an inability to participate in proceedings before the Postal Regulatory

Commission give the States Article III standing. Pls. Mem. 30-34; *see Pennsylvania*, 490 F.

Supp. 3d at 868-73; 889 n.43. The States' claims are live and, absent a permanent injunction, the

harms are imminent. Nor has Congress precluded judicial review of the States' claims. The

administrative review scheme under 39 U.S.C. § 3662 is not exclusive and, even if it were,

Congress did not intend Count I to proceed under it. And nothing in the Postal Reorganization

Act suggests Congress intended to preclude review of Count II.

Finally, the States' proposed remedy is carefully tailored to the Postal Service's

nondiscretionary statutory obligations and the facts of this case.

I.      **This Court has jurisdiction.**

  A.      **The Plaintiff States have standing.**

To have Article III standing, the States must establish "(1) an injury that is (2) fairly

traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by

the requested relief." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (internal quotation

marks omitted). A constitutionally sufficient injury requires "'an invasion of a legally protected

interest' that is 'concrete and particularized' and 'actual or imminent.'" *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The Postal Service does not

dispute that the States had standing in 2020 to challenge its cost-cutting policy, effectuated by

numerous strategies including the initiative to eliminate late and extra trips. Nor does the Postal

Service dispute traceability, redressability, or that mail delays and an inability to participate in

proceedings before the Postal Regulatory Commission are concrete and particularized injuries.

Instead, the Postal Service mischaracterizes the States' factual allegations, Defs.' Opp'n 19,

criticizes the States for not submitting new declarations showing harm from enjoined activities,

*id.* 18-19, and appears to argue that the case is moot because the Postal Service has voluntarily

ceased violating the law and the mail delays were caused by circumstances outside the Postal

Service's control, *id.* 19-21. None of these arguments deprives the States of standing.

Contrary to the Postal Service's mischaracterization, Defs.' Opp'n 19-20, the States must demonstrate standing per count, not per factual allegation, *see Pennsylvania*, 490 F. Supp. 3d at 869 (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015)). As explained in the States' opening brief and *supra* at 2-3, the initiative to eliminate late and extra trips was one of the "do-it-now" strategies implemented by the Postal Service in summer 2020 to effectuate its cost-cutting policy. The States have challenged this initiative as exceeding the limits 39 U.S.C. § 3661(b) imposes on the Postal Service's authority because the initiative was a change in the nature of postal services that affected service nationwide but was implemented without an advisory opinion from the Commission (Count I). The States have also alleged that this initiative, as one of many strategies and initiatives haphazardly implemented by the Postal Service to cut costs, violates the Postal Service's nondiscretionary obligations under 39 U.S.C. § 101(e) and § 403 (Count II). As the evidence shows—and as Postmaster General DeJoy acknowledged contemporaneously—these strategies and initiatives caused service performance to decline dramatically in early July 2020. Pls.' Mem. 30-31. And as this Court has already found, the harm from mail delays and the States' inability to participate in Commission proceedings are legally cognizable injuries. *Pennsylvania*, 490 F. Supp. 3d at 870-73; *see also id.* at 889 n.43 (observing that the same evidence supporting Count I would support Count II).[1]

The Postal Service criticizes the States for not submitting new declarations, Defs.' Opp'n 19-20—but the Postal Service has been under an injunction from this Court since September 2020. Order (ECF No. 63); Clarification Order (ECF No. 70) (clarifying paragraphs 3, 4.b, 4.c,

---

[1] Pennsylvania, joined by States that are a plaintiff in this or related litigation, recently submitted a Statement of Position to the Commission on the Postal Service's request for an advisory opinion on proposed changes to the service standards for First-Class Mail. *See Statement of Position of 21 Attorneys General and Two Cities* (Postal Regulatory Comm'n Docket No. N2021-2, Filing ID: 118997) (June 21, 2021) (Ex. 83).

and 4.d of ECF No. 63). To demand updated declarations that demonstrate ongoing harm from initiatives that are currently enjoined would suggest the Postal Service has not followed this Court's orders. The Postal Service's invocation of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is wholly inapt. There, the plaintiff was asking for a preliminary injunction, *Lyons*, 461 U.S. at 99-100; here, the States are asking the Court to make permanent an existing injunction. Moreover, the Supreme Court found that the plaintiff had not demonstrated he was likely to be subject to the relevant conduct again (being stopped by law enforcement and placed in a chokehold). *Lyons*, 461 U.S. at 105. Here, the evidence demonstrates that the Postal Service is committed to its cost-cutting policies, which were implemented agency-wide with nationwide effect, including in the Plaintiff States. *E.g.*, Defs.' Opp'n 7-8, 49. Without an injunction, the Postal Service will likely re-implement the policy, effectuated by numerous strategies and initiatives, exactly as it did before.

This case is not moot. A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation omitted). Neither circumstance is present here. Absent a judgment from the Court, the Postal Service can re-implement its initiative to immediately eliminate late and extra trips, and enforce this initiative by declaring such trips unauthorized contractual commitments, without first going to the Commission. The Postal Service's insistence that it did not, and will not, "ban" late and extra trips, Defs.' Opp'n 12-13, 21, 59, is a semantic red herring and fails to acknowledge the unauthorized contractual commitment directive already given. Likewise, without a judgment, the Postal Service can continue with its poorly planned and badly communicated cost-cutting policies without regard to its nondiscretionary obligations under the PRA to give the "highest consideration" to "important letter mail" and to "provide

adequate and efficient postal services." 39 U.S.C. §§ 101(e), 403(a). The Postal Service acknowledges that cutting costs remains a key priority and admits that reducing work hours is an annual occurrence. Defs.' Opp'n 6-8, 49. The States retain a legally cognizable interest in avoiding additional mail delays and participating in the Commission process.

The Postal Service's reliance on *Already, LLC*, Defs.' Opp'n 19-20, is misplaced. That case addresses when voluntary cessation renders a challenge moot—but the Postal Service has not voluntarily ceased the challenged behavior. Instead, it has been subject to this Court's injunction, including an order requiring the use of late and extra trips "where reasonably necessary to meet service standards and service performance targets." Clarification Order ¶ 3 (ECF No. 70). Even if the Postal Service had voluntarily terminated its effort to eliminate late and extra trips prior to this lawsuit, the Postal Service "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC,* 568 U.S. at 91; *see also Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (explaining that the court is "skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along" (citations omitted)). The Postal Service has presented no evidence that it has abandoned its effort to eliminate late and extra trips or abandoned its designation of all late and extra trips as unauthorized contractual commitments, nor has it suggested it will take such an initiative to the Commission prior to implementation. The Postal Service presents a declaration from Robert Cintron, who states that the Postal Service has "no intention of prohibiting, banning or generally discouraging the use of necessary late and extra trips." Fourth Cintron Decl. ¶ 4 (Defs.' Cross-Mot. for Summary J., Ex. 19) (not docketed). The Postal Service's intentions—as understood by Mr. Cintron—do not

prevent the Postal Service from "return[ing] to [its] old ways." *Already, LLC*, 568 U.S. at 92 (internal quotation marks omitted). Indeed, the evidence from last summer demonstrates that Mr. Cintron is not always privy to decisions by Postal Service leadership to change transportation operations. *See* Williams. Dep. 168:15-170:4 (Ex. 60) (ECF No. 124).

Nor can the Postal Service sidestep its role in the States' injuries by blaming circumstances. Defs.' Opp'n 20-21. For one, the Postal Service's poor communications and lack of consideration of the COVID-19 pandemic partly caused the mail delays and partly informs Count II. The challenges attendant to the COVID-19 pandemic are not over and absent an injunction the Postal Service can haphazardly reinstate its cost-cutting policies, including its initiative to eliminate late and extra trips. Moreover, the evidence shows that the initiative itself (as well as how it was implemented) directly correlated to a decline in service performance. *See* Pls.' Mem. 15; *compare* PowerPoint - COO Learn and Grow Field Webinar, at 14-15 (July 31, 2020)███████████████████████████████████ (Ex. 8) (under seal), *with* USPS Service Performance for Market-Dominant Products (Jan. 10, 2020 - June 25, 2021) (showing dramatic decline in service performance beginning the week ending in July 17, 2020) (Ex. 84). And as this Court has already concluded, the Postal Service's policies "contributed" to the States' injuries; the States need not prove that the Postal Service's actions were the sole or even primary cause to have standing. *Pennsylvania*, 490 F. Supp. 3d at 871-72 (citing *Massachusetts v. EPA*, 549 U.S. 497, 523-24 (2007)).

> **B.     Congress did not preclude judicial review of Count I or Count II.**

As the Court ruled at the preliminary injunction stage, there is jurisdiction for the States' claims. *Pennsylvania*, 490 F. Supp. 3d at 858-68 & n.30. The Court should reach the same conclusion now—not because it is bound by the earlier ruling, but because that decision was right.

Three separate provisions establish a district court's jurisdiction over cases, such as this one, brought against the Postal Service that raise federal questions. *See* 28 U.S.C. § 1339 (jurisdiction for civil actions relating to the Postal Service); 39 U.S.C. § 409(a) (jurisdiction for civil actions against the Postal Service); 28 U.S.C. § 1331 (jurisdiction for federal questions). Nevertheless, the Postal Service argues that this Court lacks jurisdiction over both of the States' active counts. In support, the Postal Service points to the discretionary and limited scheme of administrative review under 39 U.S.C. § 3662 that exists to examine certain Postal Service acts. As to Count I, the Postal Service argues that the *availability* of administrative review under § 3662 prevents this Court's jurisdiction. Defs.' Opp'n 21-34. As to Count II, the Postal Service argues that the *unavailability* of administrative review under § 3662 prevents this Court's jurisdiction. Defs.' Opp'n 43-44. For overlapping reasons, those inconsistent arguments are incorrect.

### 1.     The Court has jurisdiction for Count I.

For this Court not to have jurisdiction over the States' first claim, despite the three separate grants of jurisdiction, it must be "fairly discernible" that Congress intended for § 3662 to be the exclusive means of review. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 114 (1994). Whether it is "fairly discernible" depends on an evaluation of the relevant statute's text, structure, and purpose. *See Elgin*, 567 U.S. at 10; *Thunder Basin*, 510 U.S. at 207. Even exclusive regimes, however, have limits. They apply only to claims that Congress intended them to cover. *Thunder Basin*, 510 U.S. at 212. Here, the Court has jurisdiction because § 3662 does not create an exclusive procedure and, in any event, its procedures are not meant to apply to the States' claim.

      a.      **It is not "fairly discernible" that Congress meant 39 U.S.C. § 3662 to be an exclusive review scheme.**

Section 3662(a) provides that individuals who believe the Postal Service "is not operating in conformance" with certain identified provisions "may lodge a complaint" with the Commission. Nothing in the text and purpose of this provision, nor the broader structure of the Postal Reorganization Act, suggests that Congress intended for § 3662 to be exclusive.

As this Court already correctly explained, "courts should assume words mean what they appear to say." *Pennsylvania*, 490 F. Supp. 3d at 860, 862. Congress's use of "may" strongly communicates an intention for the administrative proceedings created by Postal Reorganization Act to be discretionary. *Id.*; *S. California Edison v. USPS*, 134 F. Supp. 3d 311, 318 (D.D.C. 2015); *see also Bastardo-Vale v. Att'y Gen. United States*, 934 F.3d 255, 263 n.4 (3d Cir. 2019) (explaining that "'may' conveys permission"). Other provisions in § 3662 corroborate that intention. Congress directed that the Commission "*shall*, within 90 days after receiving a complaint" either respond or dismiss any complaint made before it, 39 U.S.C. § 3662(b) (emphasis added), and, if the Commission finds the complaint justified, "it *shall* order that the Postal Service take such action as the Commission," *id.* § 3662(c) (emphasis added). Congress's use of the obligatory "shall" in some parts of § 3662 is further reason to read its use of "may" in § 3662(a) as permissive. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001); *New York v. Trump*, 490 F. Supp. 3d 225, 238-39 (D.D.C. 2020). The Postal Service's attempt to draw comparisons with *Elgin*, Defs.' Opp'n 28, falls flat: "may" was used only in the context of administrative *appeals*, not *initial* administrative review, *see* 5 U.S.C. § 7701(a).

Indeed, "may lodge a complaint" and "may . . . institute proceedings for review" are far from the definitive statements Congress has elsewhere provided to signal an intention that initial judicial review is unavailable. The administrative scheme at issue in *Thunder Basin*, for example,

provided that after the Secretary of Labor issues a citation to operators of unsafe coal mines, the Secretary "*shall* . . . notify the operator by certified mail of the civil penalty proposed to be assessed." 30 U.S.C. § 815(a) (emphasis added). If the operator did not notify the Secretary within 30 days of his intent to contest the citation, the citation "shall be deemed a final order of the Commission and *not subject to review by any court or agency*." *Id.* (emphasis added). The Third Circuit found an almost identical statutory scheme generally applicable for workplace safety citations also was exclusive. *Culver v. U.S. Dep't of Lab. Occupational Safety & Health Admin.*, 248 F. App'x 403, 406 (3d Cir. 2007). In other places, Congress has used language such as "an order of deportation or of exclusion *shall not* be reviewed by any court" and "the procedure so prescribed shall be the *sole and exclusive procedure* for determining the deportability of an alien under this section" to signal exclusivity. *Massieu v. Reno*, 91 F.3d 416, 421-22 (3d Cir. 1996). Section 3662 lacks such definite statements.

The Supreme Court also determined that the statutory scheme under review in *Elgin* was exclusive because of detail not present in the Postal Reorganization Act's comparable scheme. The administrative procedures involved in *Elgin* "prescribe[d] in great detail the protections and remedies applicable to adverse personnel actions against federal employees." 567 U.S. at 11-12 (internal quotation marks omitted);[2] *see also Adorers of the Blood of Christ v. Fed. Energy*

---

[2] The administrative procedures at issue in *Elgin* were as follows. First, there were distinct procedures depending on the severity of the adverse action. *See* 5 U.S.C. §§ 7503, 7513. Second, the injured party was entitled to advance written notice of the reasons for the proposed action; the length of advance notice required varied with the severity of the adverse action. *Id.* §§ 7503(b)(1), 7513(b)(1). Third, the injured party was assured the opportunity to respond to the reasons given for the adverse action, and to present supporting evidence; again, the amount of time allotted for a response varied with the severity of the proposed adverse action. *Id.* §§ 7503(b)(2), 7513(b)(2). Fourth, the injured party was provided the right to counsel. *Id.* §§ 7503(b)(3), 7513(b)(3). Fifth, the injured party was entitled to a written decision. *Id.* §§ 7503(b)(4), 7513(b)(4). Sixth, Congress required that all records of the proceedings be maintained. *Id.* §§ 7503(c), 7513(e). Seventh, for more serious discipline, the injured party may

*Regul. Comm'n*, 897 F.3d 187, 194 (3d Cir. 2018) (finding "detailed" systems of administrative

review to be exclusive). The Postal Reorganization Act, by contrast, allows for a complaint to the

Commission, which the Commission must act on or dismiss within 90 days, but can also just

ignore. 39 U.S.C. § 3662(a)-(b). If the Commission considers the complaint justified, it can

direct the Postal Service to fix the problem and fine the Postal Service if it deliberately fails to

comply. *Id.* § 3662(c)-(d). Parties aggrieved by a Commission decision can appeal. *Id.* § 3663.

Section § 3662 has neither the definitive language nor the detail that courts have relied on to

discern that Congress meant for an initial administrative review procedure to operate exclusively.

The purpose of § 3662 also speaks to its limitations. Congress enacted § 3662 to

minimize external interference with the Postal Service's management of rates and services. *See*

*LeMay v. USPS*, 450 F.3d 797, 800 (8th Cir. 2006); *see also Pennsylvania*, 490 F. Supp. 3d at

863-64 (summarizing legislative history). Allowing the Commission to hear individualized

complaints about rates and services accomplishes that objective. In 2006, Congress broadened

the Commission's power of review under § 3662, but only so the Commission could "adequately

'respond[] to complaints of pricing, service, or other actions by USPS in violation of law,' such

as by 'adjusting the rates of competitive products to lawful levels if they are set below

attributable costs.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 220 F. Supp.

3d 27, 32 (D.D.C. 2016) (quoting H.R. Rep. 109-66, at 52 (2005)) (brackets in original omitted).

To this end, § 3662(c) lists examples of the Commission's remedial authority, which are:

"[O]rdering unlawful rates to be adjusted to lawful levels, ordering the cancellation of market

tests, ordering the Postal Service to discontinue providing loss-making products, or requiring the

---

have been given a hearing. *Id.* § 7513(d). Eighth, if an injured party ultimately prevailed, counsel
for the prevailing party might recover attorneys' fees. *Id.* § 7701(g)(1). And ninth, for more
serious discipline, an injured party had the right to appeal. *Id.* § 7513(d).

Postal Service to make up for revenue shortfalls in competitive products." 39 U.S.C. § 3662(c). The contemplated forms of relief confirm that "Congress intended for the PRC to adjudicate postal 'rate and service complaints.'" *Anatol Zukerman*, 220 F. Supp. 3d at 32 (quoting 39 U.S.C. § 3662) (brackets in original omitted).

Given § 3662's purpose, numerous courts have held that § 3662 is "a specific grant of authority over a defined category of postal rate/postal service concerns." *LeMay*, 450 F.3d at 800; *see also Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 986 (Fed. Cir. 2013) (citing *LeMay*); *Foster v. Pitney Bowes Inc.*, No. 11-7303, 2012 WL 2997810, at *4 (E.D. Pa. July 23, 2012) (citing *LeMay*); *Shelby Res., Inc. v. USPS*, 619 F. Supp. 1546, 1549 (S.D.N.Y. 1985); *Tedesco v. USPS*, 553 F. Supp. 1387, 1390 (W.D. Pa. 1983). The Court need not determine whether § 3662 is exclusive to individual rate and service concerns to conclude that § 3662 does not universally foreclose judicial review of matters divorced entirely from § 3662's narrow purpose. Instead, § 3662 is better regarded as a complementary section that works with the rest of the Postal Reorganization Act to "form a harmonious scheme." *Buchanan v. USPS*, 508 F.2d 259, 264 (5th Cir. 1975).

The Postal Service argues that 39 U.S.C. § 3664, which allows district courts to enforce Commission orders, is a grant of federal jurisdiction for claims the Postal Service contends would otherwise be required to go through the Commission under § 3662(a). Defs.' Opp'n 24, 29, 32-33. Section 3664 would be superfluous, the Postal Service contends, if § 3662(a) was not exclusive. But the argument begins from the faulty premise that any effort to enforce compliance with a Commission order falls under § 3662(a). Section 3662(a) allows complaints to the Commission only if the Postal Service is not "operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter." *Id.* The Postal

Service's failure to abide by a Commission order issued pursuant to § 3662(c) is not a failure to operate in conformance with § 3662(c), it is the failure to operate in conformance with a Commission order. Section 3662(a) simply does not apply in that case.

Finally, the *Lorillard* presumption of congressional awareness, Defs.' Opp'n 26 (citing *Lorillard v. Pons*, 434 U.S. 575 (1978)), has no application here. First, "the *Lorillard* canon applies only when judicial interpretations have settled the meaning of an existing statutory provision." *Pareja v. Att'y Gen. of U.S.*, 615 F.3d 180, 194 n.7 (3d Cir. 2010) (internal quotation marks omitted). In 2006, the exclusivity of § 3662 was far from settled. Some district courts said it was exclusive as to individual service issues, *supra* at 13, but the Fifth Circuit had interpreted § 3662 as a more narrowly available remedy, *Buchanan*, 508 F.2d at 264. Second, to the extent any court had, before 2006, held § 3662 to preclude judicial review, those decisions had been only in the context of service-related complaints. *Supra* at 13. So, if anything was settled, it was not the universal unavailability of judicial review that the Postal Service advocates. Finally, the *Lorillard* presumption operates only when Congress re-enacts the same law. *Pareja*, 615 F.3d at 194 n.7. Congress did not, in 2006, re-enact § 3662; it re-wrote it entirely. *See* Postal Accountability and Enhancement Act, Pub. L. 109-435, § 205, 120 Stat. 3198 (2006).

In sum, nothing in the text, structure, or purpose of the Postal Reorganization Act suggests that Congress meant for § 3662 to be exclusive.

> **b.     Even if 39 U.S.C. § 3662 is exclusive, the States' Count I does not fall within its scope.**

Even if § 3662 precludes initial judicial review where it applies, Count I is not "of the type Congress intended to be reviewed within this statutory structure." *Adorers of the Blood of Christ*, 897 F.3d at 195. For that determination, courts examine whether the exclusive statutory scheme would preclude all judicial review of the relevant claim, the extent to which the

underlying claim is "wholly collateral" to the administrative system of review, and whether administrative expertise may be useful to resolve the relevant dispute. *Id.* These three considerations are not "distinct inputs into a strict mathematical formula" but instead generally guide "the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy v. SEC*, 803 F.3d 9, 17 (D.C. Cir. 2015).

Whether an act of the Postal Service exceeded § 3661(b)'s limits is not the type of claim Congress intended the Commission to review. Section 3662's core purpose, as discussed, is to allow the Commission to review individualized complaints about rates and services. Part I.B.1.a, *supra*, at 13. To the extent courts have understood § 3662 to be exclusive despite its permissive language, it has been for ordinary service complaints that fall with § 3662's core purpose. *See Pennsylvania*, 490 F. Supp. 3d at 861 (collecting cases). Whether the Postal Service improperly circumvented a required procedure that allows for public involvement before the Postal Service makes certain changes is "wholly collateral" to individualized complaints about rates and services.

The Postal Service mistakenly maintains that the "detailed order" the States have proposed as a remedy for Count I proves that the underlying issue is not wholly collateral to the Postal Service's operations. Defs.' Opp'n 32. But the requested remedy for Count I is that the Postal Service be enjoined from implementing its extra and late trip policy "without first obtaining an advisory opinion from the Postal Regulatory Commission, as required by 39 U.S.C. § 3661" and be required to use late and extra trips as necessary until it does so. Proposed Order ¶¶ 5(b), 6(a) (ECF No. 119-1). If anything, the requested relief conveys that the underlying issue is indeed collateral to the purposes for which § 3662 was established. While the requested relief

needed to provide a remedy for Count II is more elaborate, by no plausible account is Count II of the type that Congress meant for § 3662 to cover. *See* Part I.B.2, *infra*.

Finally, the Commission does not have expertise relevant to ascertaining whether certain acts were within the Postal Service's unilateral authority or were instead subject to a procedural predicate. *New York*, 490 F. Supp. 3d at 240. The Postal Service argues that identifying whether a change is in the nature of postal service requires background knowledge of postal service operations, Defs.' Opp'n 27, but that phrase is statutorily defined, *see* 39 U.S.C. § 102(5), and so the governing analysis is one of statutory interpretation rather than application of postal expertise.

In sum, even if § 3662 establishes an exclusive review scheme, Congress did not intend the provision to cover claims that the Postal Service failed to abide by § 3661(b)'s requirements.

### 2.      The Court has jurisdiction for Count II

For Count II, the States have alleged that the Postal Service ignored statutory requirements in § 101(e), § 403(a), and § 403(b). None of those is identified in § 3662(a). Their omission is sufficient to establish that Congress did not mean for allegations that the Postal Service failed to abide by those provisions to proceed through § 3662's administrative scheme. As the Court correctly observed at the preliminary injunction stage, "none of the exceptions that Defendants assert deprive this Court of jurisdiction apply to the claims asserted under Count II." *Pennsylvania*, 490 F. Supp. 3d at 868 n.30. But while the Postal Service argues that § 3662(a) forecloses judicial review of Count I because that section references the chapter in which § 3661 is found, the Postal Service also argues that § 3662(a) forecloses judicial review of Count II because § 3662(a) does *not* reference § 101(e) and § 403. Defs.' Opp'n 43-44. But the authority that the Postal Service musters does not support that counterintuitive position.

In *Block v. Community Nutrition Institute*, the Supreme Court held that dairy consumers could not challenge certain prices dairy handlers must pay because the statutory structure only authorized the dairy handlers to sue. 467 U.S. 340, 347 (1984). The Court reasoned that "when a statute provides a detailed mechanism for judicial consideration of particular issues *at the behest of particular persons*, judicial review of those issues at the behest *of other persons* may be found to be impliedly precluded." *Id.* at 349 (emphasis added). The effect of such a decision, the Court explained, was limited because "[h]andlers have interests similar to those of consumers . . . [and] can therefore be expected to challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated." *Id.* at 352. The Court never found that channeling certain claims into a structure of administrative review meant that an agency was insulated from review for alleged statutory violations unassociated with the administrative structure. Rather, its rationale was expressly premised on understanding that the claims consumers wanted to bring would in fact be brought.

Likewise, *United States v. Erika* also does not support the Postal Service. There, the Supreme Court held that a distributor of medical supplies could not sue an insurance carrier in the Court of Claims for reimbursement of Medicare Part B claims. 456 U.S. 201, 208 (1982). But unlike here, the distributor was required to pursue administrative review of its claim, and the question was only whether the distributor was limited to that review or instead could seek *further* review in the Court of Claims. *Id.* at 207-08. The Postal Service leaps from the unremarkable holding that an exclusive administrative regimen is exclusive for the claims to which it applies, to the remarkable argument that the mere existence of an administrative structure forecloses judicial review of claims *not* subject to it.

Without any support for the Postal Service's position, there is no basis for concluding this Court is without jurisdiction over Count II just because similar claims could *not* be presented to the Commission. Countenancing such an argument would mean there would be no review for the issues raised in Count II anywhere. District court jurisdiction should be upheld where an alternative conclusion would foreclose any form of review. *Thunder Basin*, 510 U.S. at 212-213.

## II.   Under any standard, the no late and extra trip initiative was a change in the nature of postal services, exceeding the Postal Service's authority under 39 U.S.C. § 3661 (Count I).

The Postal Service agrees that the States can bring a claim for nonstatutory review of its initiative to eliminate late and extra trips but argues that the Court must apply a heightened standard of review it previously rejected. Defs.' Opp'n 34-36; *see Pennsylvania*, 490 F. Supp. 3d at 876 n.40. There is no warrant for applying the Postal Service's proposed standard. But even under that standard, the initiative to eliminate late and extra trips obviously exceeded the limits that 39 U.S.C. § 3661 puts on the Postal Service's statutory authority because the initiative was a change in the nature of postal services that affected mail service nationwide, for which the Postal Service did not seek prior review from the Postal Regulatory Commission.

Nonstatutory review gives a plaintiff a *cause of action* to determine whether a federal agency or official "has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). A plaintiff can institute a nonstatutory review action if the plaintiff cannot bring the case under "a specific or a general statutory review provision." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996); *accord Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 n.11 (3d Cir. 1991). The theory of nonstatutory review rests on the longstanding principle that "acts of all" an agency's officers "must be justified by some law, and in case an official violates the law to the injury of an

18

individual the courts generally have jurisdiction to grant relief." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902). As with any cause of action, however, nonstatutory review is not itself a source of jurisdiction. *E.g.*, *Nat'l Ass'n of Postal Sup'rs v. USPS*, 602 F.2d 420, 429 (D.C. Cir. 1979) ("An inquiry into a court's jurisdiction to hear a suit is separate and distinct from consideration of whether the suit raises issues amenable to judicial resolution.").

The Postal Service argues that the Court must conduct nonstatutory review under a "clear and obvious" standard. Defs.' Opp'n 36. But this standard applies when a court uses ultra vires action as a *source of jurisdiction* in cases "where Congress is understood generally to have precluded review." *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 492 (D.C. Cir. 1988). This theory rests on the principle that even where Congress has sought to strip a court of jurisdiction, the court nevertheless may review an agency that has acted "contrary to a specific prohibition" that is "clear and mandatory" or "disregarded a specific and unambiguous statutory directive." *Griffith*, 842 F.2d at 493 (internal quotation marks omitted); *see Leedom v. Kyne*, 358 U.S. 184, 189 (1958) (finding jurisdiction to review interim agency action "made in excess of its delegated powers and contrary to a specific prohibition in the Act" that is "clear and mandatory," despite express finality provision in statute). Because a court acts without specific direction from Congress in this circumstance, it makes sense that it requires a heightened showing. Indeed, the D.C. Circuit has recognized the difference. *E.g.*, *Griffith*, 842 F.2d at 492 ("Even where Congress is understood generally to have precluded review, the Supreme Court has found an implicit but narrow exception, *closely paralleling the historic origins of judicial review for*

*agency actions in excess of jurisdiction*.") (emphasis added); *Mittleman*, 757 F.3d at 307

(discussing nonstatutory review with a "cf." citation to *Leedom*).[3]

When assessing Postal Service actions under nonstatutory review, neither the D.C.

Circuit nor the Third Circuit has used the "clear and obvious" language the Postal Service claims

is ubiquitous—and the Postal Service has not identified any circuit decision does. *E.g.*, *Eagle Tr.*

*Fund v. USPS*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ("exceeded its statutory authority");

*Mittleman*, 757 F.3d at 307 ("exceeded the scope of its statutory authority"); *N. Air Cargo v.*

*USPS*, 674 F.3d 852, 858 (D.C. Cir. 2012) ("in excess of its statutory authority"); *Aid Ass'n for*

*Lutherans*, 321 F.3d at 1172-73 ("exceeded its statutory authority"); *Air Courier Conf. of*

*Am./Int'l Comm. v. USPS*, 959 F.2d 1213, 1217 (3d Cir. 1992); *Nat'l Ass'n of Postal Sup'rs*, 602

F.2d at 432 ("whether the agency has acted within that authority"); *United Parcel Serv., Inc. v.*

*USPS*, 604 F.2d 1370, 1372 (3d Cir. 1979) ("had no authority").

As explained in Part I.B, *supra*, this Court has jurisdiction under 39 U.S.C. § 409(a), 28

U.S.C. § 1339, and 28 U.S.C. § 1331, and Congress has not precluded judicial review. Therefore,

by determining that the Postal Service exceeded its statutory authority through implementing a

change in the nature of postal services that affected service nationwide without first going to the

---

[3] *Mittleman* also cites to *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006).
There, the court used the words "clear and mandatory" when summarizing the FTC's argument
but observed only that nonstatutory review is limited in scope and more difficult than a claim
under the APA.

The Postal Service reads too much into *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1263
(D.C. Cir. 2020). The court was not engaging in nonstatutory review; instead, it was evaluating a
standalone ultra vires merits argument. Moreover, the court did not "state[] that the restrictive
standard applies to nonstatutory ultra vires claims *in general*," Defs.' Opp'n 35; in fact, the court
made no pronouncement at all about what standard applies in cases predicated on nonstatutory
review, *see N. Am. Butterfly Ass'n*, 977 F.3d at 1263. And all three cases cited by the *N. Am.*
*Butterfly Ass'n* court were ones in which Congress had precluded judicial review and ultra vires
action served as a source of jurisdiction. *Id.*

Commission, the Court was correct in its identification and application of the governing standard. But even under a "clear and obvious" standard, the States prevail. The language of § 3661 is not ambiguous and its terms are readily subject to their "ordinary and common meaning[s]." *United Parcel Serv., Inc.*, 604 F.2d at 1376; *see Buchanan*, 508 F.2d at 262-63. That there is "no bright line," Defs. Opp'n 36, does not deprive the Court of the ability to adjudicate whether USPS was clearly and obviously in the wrong.

On the merits, § 3661(b) requires "a 'change,'" the "change must be 'in the nature of postal services,'" and the change "must affect service 'on a nationwide or substantially nationwide basis.'" *Buchanan*, 508 F.2d at 262 (quoting 39 U.S.C. § 3661(b)); *see Pennsylvania*, 490 F. Supp. 3d at 875-76. The Postal Service does not dispute that the *Buchanan* factors apply, Defs.' Opp'n 37, nor that there was a change, *id.* 38, nor that the change affected service performance on a nationwide basis, *id.* 40. The Postal Service argues only that the initiative to eliminate late and extra trips was not a change in "the nature of postal services." Defs.' Opp'n 37-40. This argument runs counter to the law and the facts.

The Postal Service argues that the initiative was not a change "in the nature of postal services" because it was not a "formal" change, such as a change to "the postal products available to a user" or a restraint on access to "essential postal services." Defs.' Opp'n 37-39. That writes words into the statute that do not exist. The PRA is clear: "postal services" are "the *delivery* of letters, printed matter, or mailable packages, including *acceptance*, *collection*, *sorting*, *transportation*, or other functions ancillary thereto." 39 U.S.C. § 102(5) (emphases added). The Postal Service does not cite this provision, much less explain how the effort to eliminate late and extra trips falls outside of its terms. Nor could it. The evidence demonstrates that the no late and extra trip initiative affected all aspects of USPS operations, including

21

delivery, acceptance, collecting, sorting, and transportation. Pls.' Mem. 15-16. Indeed, Mr.

Williams confirmed that "[e]verybody needed to understand the mission to ensure that the trips

left on time because everybody plays a part in some way." Williams Dep. 299:23-300:2 (Ex. 60).

The Postal Service attempts to avoid § 102(5) by claiming that the no late and extra trip initiative

was only a change to "*internal* processing," Defs.' Opp'n 38—but the PRA defines postal

services to include such "internal" functions as "sorting" and "transportation," 39 U.S.C.

§ 102(5). The Postal Service cannot prevail on an interpretation of the PRA inconsistent with the

"commonsense reading of the statute." *United Parcel Serv., Inc.*, 604 F.2d at 1381 (internal

quotation marks omitted).[4]

The Postal Service makes too much of prior Commission opinions about § 3661, opinions

which, in any event, the Postal Service misconstrues. For example, the Postal Service takes out

of context language from a 2010 Advisory Opinion, *see* Defs.' Opp'n 37, stating that the "change

in the nature of postal services broadly can be defined as changes to a customer's ability to

access essential postal services that require a visit to a postal retail facility," Postal Regulatory

Comm'n, *Advisory Opinion Concerning the Process for Evaluating Closing Stations and

Branches*, Docket No. N2009-1, at 11 (Mar. 10, 2010).[5] That statement described the Postal

Service proposal that prompted the advisory opinion (closing physical locations), not changes in

general. *Id.* And contrary to the Postal Service's representation, Defs.' Opp'n 39, the

Commission in 2006 stated that the "aspect of the Postal Service's network realignment program

that triggers the review provisions of section 3661 *is its potential to have a nationwide impact on*

---

[4] The Postal Service did not issue a contemporaneous interpretation of § 3661 to which the Court could give deference. *See Pennsylvania*, 490 F. Supp. 3d at 877-82.

[5] https://www.prc.gov/docs/67/67174/Advisory_Opinion_031010.pdf.

*service*," Postal Regulatory Comm'n, *Advisory Opinion Concerning a Proposed Change in the Nature of Postal Services*, Docket No. N2006-1, at 71 (Dec. 19, 2006) (emphasis added) ("2006 Advisory Opinion").[6]

Nor must the change be to public availability of postal services, Defs.' Opp'n 37, 40, to warrant an advisory opinion. *Buchanan* did not limit the term "postal services" to "postal services available to the user," Defs.' Opp'n 37; instead, the Fifth Circuit held that assessing whether a change is in the nature of postal services "*involves* a qualitative examination of the manner in which postal services available to the user will be altered," *Buchanan*, 508 F.2d at 263 (emphasis added). Similarly, in 2011 the Postal Service asked the Commission for an Advisory Opinion on screening criteria intended to determine which post offices the Postal Service could close *without* impairing public access to postal services. Postal Regulatory Comm'n, *Advisory Opinion on Retail Access Optimization Initiative*, Docket No. N2011-1, at 4 (Dec. 23, 2011).[7] But even if the change must be to public availability of postal services, the effort to eliminate late and extra trips—which required changing all aspects of USPS operations—caused significant delays that denied the public access to regular and reliable mail. Pls.' Mem. 31-34.

Finally, the Postal Service invokes the USPS Office of Inspector General's recent discussions of § 3661, Defs.' Opp'n 40-41, but OIG does not have authority to issue legal interpretations of the Postal Service's legal obligations under § 3661, *see* 39 C.F.R. § 221.3(b) (detailing OIG responsibilities). Instead, OIG reviews and applies established legal requirements. In the same OIG report the Postal Service cites, OIG acknowledged that forthcoming court decisions in this and other cases will impact its analysis. USPS OIG, Report No. 20-292-R21,

---

[6] https://www.prc.gov/docs/55/55431/N2006-1AdvDec.pdf.

[7] https://www.prc.gov/docs/78/78971/N2011-1_AdvisoryOP.pdf.

*Operational Changes to Mail Delivery*, at 18 n.12 (Oct. 19, 2020) (Ex. 52) (ECF No. 119-4)

("OIG Report Oct. 2020"). Even if OIG's interpretation carried weight, § 3661(b) does not have

an intent requirement for affecting service nationwide and no court has interpreted § 3661(b)to

include one.

Section 3661(b) ensures that the Postal Service complies with § 3661(a), which requires

the "develop[ment] and promot[ion] of adequate and efficient postal services." As the

Commission itself has stated, the purpose of its advisory opinions is to "appraise the Service's

stated goals in light of the Postal Reorganization Act's policy declarations, and to assess the

apparent soundness of all the methods it intends to use in achieving those goals." 2006 Advisory

Opinion at 13; *see* Postal Rate Comm'n, *Advisory Opinion Concerning a Proposed Change in

the Nature of Postal Services*, Docket No. N75-1, at 33-34 (Apr. 22, 1976) (stating that the

Commission should "focus on two questions: (1) whether the program conforms, in terms of its

stated objectives, to the policies of § 3661 and the remainder of title 39; and (2) whether the

methodology employed in the program is sufficiently sound to enable the program to meet those

objectives.").[8] Input from a body of experts on proposed postal changes is especially important

when the effects of a proposal "on the postal system cannot be known in advance." 2006

Advisory Opinion at 13. A "timely and properly instituted section 3661(b) proceeding" allows

for "public participation and the development of a record" to determine whether the change will

impact postal services and service performance. Postal Rate Comm'n, *Notice and Order on

Complaint Concerning Sunday and Holiday Mail Collections*, 66 Fed. Reg. 16,504, 16,507 n.12

(Mar. 26, 2001). And an advisory opinion from the Commission can identify errors,

unanticipated effects, and unconsidered factors that help guide the Postal Service in fulfilling its

---

[8] https://www.prc.gov/prcarchive/viewpdf.aspx?docid=508276839.

statutory obligations to the public. *E.g.*, Postal Regulatory Comm'n, *Advisory Opinion on Elimination of Saturday Delivery*, Docket No. N2010-1, at 1 (Mar. 24, 2011) (finding that Postal Service proposal overstated cost savings by $1.4 billion, would cause net revenue losses of $0.6 billion, would cause 25 percent of all First-Class and Priority mail to be delayed, and failed to consider the impact on rural communities);[9] 2006 Advisory Opinion at 3 (finding that "evidentiary record does not provide assurance that the proposed realignment program, as currently envisaged, will meet its declared goals").

The evidence demonstrates that the initiative to eliminate late and extra trips was a change in the nature of postal services that affected service on a nationwide base, which was implemented without an advisory opinion from the Commission as required by 39 U.S.C. § 3661(b). The Court should enter judgment for the States on Count I.

## III. Under any standard, the 2020 cost-cutting policy, effectuated by numerous operational strategies, violated nondiscretionary statutory obligations under 39 U.S.C. § 101(e) and § 403 (Count II).

In the Postal Reorganization Act, Congress reiterated, and codified as law, the Postal Service's public duties. *See* 39 U.S.C. §§ 101, 403. According to the Postal Service, those duties are just unenforceable suggestions. The provisions' text proves otherwise. On the merits, for the same reasons discussed in Part II, *supra*, the Court faces a straightforward task: assess whether the Postal Service exceeded its statutory authority by hastily and haphazardly adopting a cost-cutting policy, effectuated by numerous strategies and initiatives (including the no late and extra trip initiative), without giving any consideration to important letter mail and without taking steps to provide prompt and efficient postal services. Under any standard—including the Postal Service's proposed "clear and obvious" standard—the States prevail.

---

[9] https://www.prc.gov/Docs/72/72327/Advisory_Opinion_032411.pdf.

As with all agencies, the Postal Service's powers exist as Congress has prescribed them. *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). Congress has established and empowered the modern Postal Service through the Postal Reorganization Act (as amended) and imposed certain nondiscretionary obligations on its exercise of power. *See* 39 U.S.C. §§ 101(e), 403(a), 403(b). The Postal Service attempts to circumvent the conditions placed on its authority by claiming that § 101 and § 403 merely represent "general policy goals that the Postal Service should attempt to achieve." Defs.' Opp'n 45-46. But Congress said "shall"—not "attempt to." *See* 39 U.S.C. §§ 101(e); 403(a), (b). And the Postal Service does not identify any "evidence of a legislative intent to foreclose judicial intervention" of these provisions. *See Nat'l Ass'n of Postal Sup'rs*, 602 F.2d at 429.

The Postal Service further claims that § 101 and § 403 are immune from judicial review because they lack "judicially manageable standards." Defs.' Opp'n 46-48. But § 101 and § 403 are no less susceptible to statutory interpretation than any other statute: a court begins with the plain language of the text, then "methodically" applies "traditional tools of statutory interpretation" to confirm "assumptions about the 'common understanding' of words." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 n.5 (2021); *e.g.*, *Smith v. United States*, 508 U.S. 223 (1993) (interpreting the word "use").[10] Indeed, it is rare that a court is unable to develop judicially manageable standards, such as when Congress has committed decision-making to agency discretion by law.[11] *E.g.*, *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (discussing exception under Administrative Procedure Act for action committed to agency discretion by

---

[10] The Postal Service has never supplied any interpretation of § 101 or § 403, contemporaneous or otherwise.

[11] Or when a case raises a political question. *E.g.*, *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019).

law); *Gentile v. Sec. & Exch. Comm'n*, 974 F.3d 311, 318-19 (3d Cir. 2020) (same); *but see Nat'l Ass'n of Postal Sup'rs*, 602 F.2d at 432 ("That the Postal Service has broad discretion in setting compensation levels does not mean, however, that its decisions are entirely insulated from judicial surveillance."). The "repeated use of 'shall'" in § 101(e) and § 403, however, "creates an obligation impervious to discretion." *Prometheus Radio Project v. Fed. Commc'ns Comm'n*, 824 F.3d 33, 50 (3d Cir. 2016) (internal quotation and ellipses omitted).

That the States have faulted the Postal Service for failing to conduct an appropriate analysis, Defs.' Opp'n 46-47, 55-56, does not turn the States' claim into an arbitrary-and-capricious challenge. Congress, not the States, requires the Postal Service to "give the highest consideration" to the most expeditious handling of important letter mail when "determining *all* policies for postal services," 39 U.S.C. § 101(e) (emphasis added), and to "plan" and "develop" "adequate and efficient postal services," 39 U.S.C. § 403(a). Pointing out that the Postal Service adopted a cost-cutting policy but gave no consideration to the impact on service performance generally or important letter mail specifically, or that the Postal Service planned and developed its cost-cutting policy without regard for consistent communications or contemporaneous circumstances that would undermine the provision of "adequate and efficient postal services," identifies only the acts that violated the Postal Service's specific statutory obligations.

The language of § 101(e) is clear: "In determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. § 101(e). The Postal Service does not dispute that First-Class Mail, election mail, and census mail constitute "important letter mail." Congress made clear that such mail was to receive the "*most* expeditious collection, transportation, and delivery," *id.* (emphasis added), and, for good measure, directed

the Postal Service to give this "requirement" the "*highest* consideration," *id.* (emphasis added).

And Congress instructs the Postal Service to provide this heightened consideration when

"determining *all* policies for postal services," *id.* (emphasis added), which Congress elsewhere

defined to be "the delivery of letters, printed matter, or mailable packages, including acceptance,

collection, sorting, transportation, or other functions ancillary thereto," 39 U.S.C. § 102(5). The

common and ordinary meaning of "determining" indicates that the Postal Service must provide

this consideration during the development process and prior to implementing the policy. And the

use of the word "shall" makes this provision mandatory.

The language of § 403 is also clear. Section 403(a) states: "The Postal Service shall plan,

develop, promote, and provide adequate and efficient postal services[.]" 39 U.S.C. § 403(a). The

Postal Service does not dispute giving "adequate and efficient" their common and ordinary

meanings: "a baseline of good quality postal services with little waste." Pls.' Mem. 51-52. As

already discussed, "postal services" are "the delivery of letters, printed matter, or mailable

packages, including acceptance, collection, sorting, transportation, or other functions ancillary

thereto." 39 U.S.C. § 102(5). The canon against surplusage requires giving effect to each verb:

the Postal Service must *plan* for adequate and efficient postal services, *develop* adequate and

efficient postal services, *promote* adequate and efficient postal services, and *provide* adequate

and efficient postal services. 39 U.S.C. § 403(a); *see United States v. Jackson*, 964 F.3d 197, 203

(3d Cir. 2020) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The "adequate and

efficient" obligation, therefore, exists both *ex ante* and *ex post*: the Postal Service must plan for

and develop adequate and efficient postal services, and then promote and provide those services.

Section 403(b)(1) complements and extends § 403(a): "It shall be the responsibility of the Postal

Service—(1) to *maintain* an efficient system of collection, sorting, and delivery of the mail

28

nationwide[.]" 39 U.S.C. § 403(b)(1) (emphasis added). As with § 101(e), the word "shall" makes these provisions mandatory.

The Court need not determine every circumstance in which the Postal Service might run afoul of § 101(e) or § 403 in order to conclude that the cost-cutting policy adopted in summer 2020 exceeded the Postal Service's authority. Courts adjudicate the cases and controversies presented to them, and the hypothesized existence of hard cases does not prevent courts from deciding the easy ones. *E.g.*, *Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, No. 20-255, 2021 WL 2557069, at *5-6 (U.S. June 23, 2021).

As the Court has already observed, this is just such an easy case. *See Pennsylvania*, 490 F. Supp. 3d at 889 n.43. The Postal Service haphazardly adopted numerous strategies and initiatives in summer 2020—including the no late and extra trip initiative—to cut costs and address concerns raised by Postmaster General DeJoy. Pls.' Mem. 12-30. Some initiatives, such as the effort to eliminate late and extra trips, negatively impacted all aspects of postal service operations, undermining the provision of "adequate and efficient postal services." 39 U.S.C. § 403(a); Pls.' Mem. 15-16. The strategies and initiatives were quickly implemented and poorly communicated to the field, causing confusion and inconsistent application (for example, whether overtime was being eliminated), which further damaged the provision of "adequate and efficient postal services." 39 U.S.C. § 403(a); Pls.' Mem. 14, 17-20, 28-30. At no point did the Postal Service give any consideration, much less the "highest consideration," to how rushing to cut work hours and address Postmaster General DeJoy's concerns would affect the "requirement for the most expeditious collection, transportation, and delivery of important letter mail," including First-Class Mail and election mail. 39 U.S.C. § 101(e); Pls.' Mem. 27. Likewise, the Postal Service did not give any consideration to how the ongoing pandemic and the then-upcoming

election would affect this "requirement." 39 U.S.C. § 101(e); Pls.' Mem. 27. Nor did the Postal Service, while planning and developing its strategies and initiatives, assess whether they would "provide adequate and efficient postal services," especially in light of the ongoing pandemic and then-upcoming election. 39 U.S.C. § 403(a); Pls.' Mem. 27. As a result, the Postal Service exceeded its statutory authority.

The Postal Service's objections should not persuade the Court. The Postal Service says it had previously engaged in work hour reduction efforts and that some of the many strategies had been used before, Defs.' Opp'n 49-51, but neither § 101(e) nor § 403 exempts policies that may have been already tried. Even if they did, certain strategies and initiatives were undisputedly new, including the no late and extra trip initiative enforced by making all such trips unauthorized contractual commitments, Pls.' Mem. 17, ████████████████████████████ ████████████████████ Colin Dep. 210:13-211:10 (Ex. 57) (filed under seal). The Postal Service claims that it "distributed these prior-year plans in the same manner as the 2020 plan," Defs.' Opp'n 52, but does not provide evidence disputing the OIG's determination that the "prior year initiatives were not executed with the same velocity and consistency as the July 2020 initiatives," OIG Report Oct. 2020 at 13 (Ex. 52) (ECF No. 119-4). To the contrary, the very evidence cited by the Postal Service proves the point. Colin Dep. 259:16-24 ("Q. But you said you never received a particular timeline for implementing those strategies, correct? A. Not like this. It was -- they would say, you know, quarter one implementation, first day quarter one. And then we didn't do project plans, we had to work up against a timeline to get it implemented by quarter one.") (Ex. 57) (filed under seal); *id.* 323:11-14 ("Q. Okay. So [in prior years] the timeline was something that you created as the area vice president? A. Yes.").

Nor does the Postal Service provide evidence rebutting the States' showing that the many strategies and initiatives were poorly communicated and caused confusion. *Compare* Pls.' Mem. 14, 17-20, 22-23, 28-30, *with* Defs.' Opp'n 52-53. The Postal Service baldly claims that the States provided no evidence of how poor communications caused delays, Defs.' Opp'n 52, but admits twice in its own brief that "service consequences . . . were the result of implementation issues caused by poor communication," Defs.' Opp'n 59; *id.* 20 ("delays occurred due to . . . issues with communication, which caused operational confusion").

The Postal Service further concedes that it "did not do a formal analysis for the strategies in 2020." Defs.' Opp'n 54.[12] That the Postal Service *generally* tries to "optimize its operations so they run on-time and in an efficient manner," Defs.' Opp'n 55, does not mean that it gave any consideration, much less the "highest consideration," to First-Class Mail and election mail when developing and implementing its cost-cutting policy in summer 2020, during a pandemic and ahead of an election that would depend significantly on the mail. Nor does the Postal Service demonstrate that it assessed what impact an aggressive effort to cut work hours would have on "adequate and efficient postal services" during a pandemic and ahead of the election. Likewise, that late and extra trips are generally inefficient, Defs.' Opp'n 55-56, does not rebut the States' contention that the Postal Service did no advance analysis, and gave no consideration to important letter mail, before it abruptly implemented the initiative to eliminate late and extra trips by making them unauthorized contractual commitments, *e.g.*, Williams Dep. 235:20-238:22 (Ex. 60) (ECF No. 124).

---

[12] To the extent the Postal Service has offered post hoc explanations, these cannot support Postal Service action, even on ultra vires review. *See N. Air Cargo*, 674 F.3d at 859-60 (explaining that *SEC v. Chenery*, 318 U.S. 80 (1943), predates the Administrative Procedure Act).

Finally, the Postal Service's claim that "the entire purpose of the strategies was to improve the Postal Service's ability to provide adequate and efficient postal services," is belied both by the record—*e.g.*, Pls.' Mem. 13 ████████████████████████████ ████████████████████████████████ PowerPoint - AVP Telepresence (July 7, 2020) ██████████████████████████████████████████ ██████ (Ex. 4) (filed under seal)—and by the Postal Service itself, *e.g.*, Defs.' Opp'n 49 ("The Postal Service identified the 'Do-It-Now Strategies' as part of its annual effort to meet its annual integrated financial plan. . . . [W]hen its financial plan anticipates a shortfall in revenues that will not cover the Postal Service's expenses (as has been the case for many years), the Postal Service estimates the number of work hours that it must reduce to help it make up the shortfall.").

In sum, the evidence demonstrates that the Postal Service in summer 2020 developed and implemented a cost-cutting policy, effectuated by numerous strategies and initiatives, but failed to give the "highest consideration" to "important letter mail" as required by 39 U.S.C. § 101(e), and failed to "plan" and "develop" its strategies and initiatives so as to "provide" "adequate and efficient postal services" as required by 39 U.S.C. § 403(a), (b). The Court should grant the States judgment as a matter of law on Count II.

## IV.    The Court should enter the States' proposed remedy.

The States seek targeted relief that tracks the facts of the case and the relevant statutory obligations. The States' proposed order would prohibit the Postal Service from implementing and enforcing its July 2020 initiative to eliminate late and extra trips without first obtaining a Commission advisory opinion and from implementing other cost-cutting policies without complying with the Postal Service's statutory obligations. Indeed, paragraphs 5(b) and 6(a) of the proposed order are directly responsive to the violations alleged in Count I, and paragraphs

5(a) and (c) are directly responsive to the violations alleged in Count II. Paragraphs 6(b) and 6(c) are necessary to provide the States with complete relief because, as even the Postal Service concedes, *see* Defs.' Opp'n 59, the harm caused by the Postal Service actions in July 2020 was exacerbated by "poor communication." None of the Postal Service's general or specific objections to the proposed order should dissuade the Court from exercising its considerable discretion in framing an appropriate injunction.

First, the Postal Service claims that the States are not entitled to any relief, Defs.' Opp'n 58, but the same facts that provide the States with standing demonstrate how the States have suffered and will continue to suffer irreparable harm absent a permanent injunction, *see* Part I.A, *supra*; *see also Pennsylvania*, 490 F. Supp. 3d at 887-88 (looking to facts supporting standing to assess irreparable harm). While the Postal Service claims, for example, "[t]here is no indication in the record that the purported Trips Initiative will reoccur," Defs.' Opp'n 59, it has provided no evidence that it has abandoned the initiative or the designation of all late and extra trips as unauthorized contractual commitments, *see supra* at 7-8. Likewise, the Postal Service claims it does not intend to reinstate "any initiatives that would likely cause mail delays," Defs.' Opp'n 59, but opened its brief by explaining how cutting costs remains a key priority and later emphasized that reducing work hours is an annual occurrence, Defs.' Opp'n 6-8, 49.[13] Service performance remains below pre-July 2020 levels and the COVID pandemic is not over. *See* USPS Service Performance for Market-Dominant Products (Jan. 10, 2020 - June 25, 2021) (Ex. 84). Yet for nearly a year, the Postal Service has steadfastly defended the legality of its cost-

---

[13] The Postal Service has also proposed changes to service standards that will slow 39 percent of First-Class Mail. *See Statement of Position of 21 Attorneys General and Two Cities* (Postal Regulatory Comm'n Docket No. N2021-2, Filing ID: 118997), at 4 (June 21, 2021) (Ex. 83); *see also Service Standards for Market-Dominant Mail Products*, 86 Fed. Reg. 21,675 (Apr. 23, 2021).

cutting measures, including its initiative to eliminate late and extra trips; refused to admit the irresponsibility of changing all Postal Service operations and rushing to cut work hours during a pandemic, ahead of a major election, and without a cogent communications plan; and minimized the role its actions played in the indisputable mail delays that followed. Defs.' Opp'n 59. The States have every reason to anticipate that absent an injunction, the Postal Service will reinstate the no late and extra trip initiative and other cost-cutting measures, to the detriment of service performance and public participation in proceedings before the Commission.

Second, the proposed order targets the unlawful conduct that has caused and will continue to cause the States' injuries. Thus, there is no merit to the Postal Service's alternative arguments that the proposed order is both too prescriptive—by "entangl[ing] this Court in the Postal Service's day-to-day operations"—and too general to satisfy Rule 65(d). Defs.' Opp'n 62-63. For the former point, while the Postal Service now bemoans that the proposed order would turn this Court into a micromanager of the Postal Service, that both severely overstates matters and neglects that the Postal Service has previously required clarification to "ensure that it is complying with court orders," Defs.' Mot. to Clarify 2 (ECF No. 66), and elsewhere has criticized a more general request for relief as vague, Defs.' Br. 43-45 (ECF No. 67), *New York v. Trump*, No. 20-2340 (D.D.C. Oct. 27, 2020). Cognizant of this history, the proposed relief is not "inappropriate," Defs.' Opp'n 65, but instead intentionally designed to meet the needs of this case.

The States' proposed order is carefully tailored to the Postal Service's statutory obligations, the conduct that exceeded these obligations, and common sense. As relief for Count I, the States ask to enjoin the Postal Service from "[i]mplementing and enforcing any effort to prohibit or eliminate late and extra trips," including any "directive designating all extra trips and

Postal Service-caused late trips unauthorized contractual commitments," unless the Postal

Service first seeks an advisory opinion from the Commission as required by 39 U.S.C. § 3661(b).

Proposed Order ¶ 5(b) (ECF No. 119-1). Likewise, as relief for Count II, the proposed order

would enjoin that same directive, which was one of the "do-it-now" strategies, because the

evidence shows it undermines both the "expeditious collection, transportation, and delivery of

important letter mail" and the provision of "adequate and efficient" postal services. *Id.* ¶ 5(a); *see*

39 U.S.C. §§ 101(e), 403(a). Paragraph 6(a) is almost identical to the injunction currently in

place, modified only in response to new information provided by the Postal Service in its recent

motion to clarify. *Compare* Proposed Order ¶ 6(a), *with* Clarification Order ¶ 3 (ECF No. 70);

*see* Pls.' Resp. in Opp'n 4-5 (ECF No. 117). Paragraph 5(c), also a remedy for the violations

alleged under Count II, provides relief for the overarching cost-cutting policy that the Postal

Service implemented in 2020 without regard for its impact on service performance and without

communicating the policies to relevant employees. The proposed relief in paragraph 5(c) would

specifically require the Postal Service not to implement cost-cutting policies, "do-it-now"

strategies, or work hour reduction efforts in disregard of its statutory obligations. The language

proposed in paragraph 5(c)(1) is taken directly from 39 U.S.C. § 101(e), while paragraph 5(c)(2)

draws from 39 U.S.C. § 403(a) and (b). And because the Postal Service's haphazard approach to

communication played such an integral part in the harm that the Postal Service inflicted,

paragraphs 5(c)(3), 6(b), and 6(c) direct the Postal Service to avoid repeating the same problem.

Together, these paragraphs would prevent the very conduct that led to the nationwide mail delays

and would ensure that cost-cutting measures are planned and developed to provide for adequate

and efficient postal services and to give the highest consideration to important letter mail,

including First-Class Mail.

The States' proposed remedy is especially appropriate given that the Postal Service now claims that *none* of the do-it-now strategies are enjoined. Defs.' Opp'n 19. This statement is alarming. Many of the Postal Service's do-it-now strategies fall within the scope of the Court's preliminary injunction. *E.g.*, Order ¶ 4.a (ECF No. 63) ("Defendants, and all their respective officers, agents, servants, employees and attorneys, and persons in active concert or participation with them are hereby ENJOINED from the following: continued implementation or enforcement of operational changes announced in July 2020 reflected in the July 10, 2020 'Mandatory Stand-Up Talk: All Employees,' and the 'PMGs Expectations' PowerPoint unless and until the Postal Service presents such changes to the Postal Regulatory Commission and obtains an advisory opinion after a public hearing is held pursuant to 39 U.S.C. 3661(b) and 39 U.S.C. 3661(c)."); Clarification Order ¶ 3 (ECF No. 70) ("Transportation, in the form of late and extra trips is authorized and shall be used where reasonably necessary to meet service standards and service performance targets."). A detailed permanent injunction is necessary to appropriately guide the Postal Service about its legal obligations.

The proposal does not seek to balance—or ask this Court to balance—important policy objectives of an executive agency or mandate how the Postal Service completes its important charge; instead, it asks for the Postal Service to comply with the law, conduct basic analysis of the possible effect on service before implementing nationwide measures, and communicate those measures clearly and consistently. *See* 39 U.S.C. §§ 101(e) ("In *determining all policies* for postal services, the Postal Service shall give the highest consideration. . . .") (emphasis added); 403(a) ("The Postal Service shall *plan*, *develop*, promote, and provide adequate and efficient postal services . . . .") (emphasis added). Of course, any relief this Court enters need not be "forever," Defs.' Opp'n 62—the Court may set an expiration date for its order, if it deems one

appropriate. *See, e.g.*, *Perficient, Inc. v. Munley*, 973 F.3d 914, 916 (8th Cir. 2020) (reviewing district court's grant of "permanent injunctive relief of short duration" and remanding for further proceedings after its expiration); *FTC v. Cephalon, Inc.*, No. 08-2141, 2015 WL 4931442, *6 (E.D. Pa. June 17, 2015) (order set to expire ten years after entry).

As for the Postal Service's opposite concern that the proposed order is too general to satisfy Rule 65(d), the rule's requirements are "relate[d] to the court's awesome civil and criminal contempt powers," designed to prevent exposure to the risk of contempt unless the party has "been given specific notice of the norm to which they must pattern their conduct." *Gillam v. U.S. Dep't of Agriculture*, 486 F. Supp. 3d 856, 881 (E.D. Pa. 2020) (quoting *Hope v. Warden of York Cty. Prison*, 972 F.3d 310, 322 (3d Cir. 2020)). An order granting an injunction may provide definitions or interpretations from the court to ensure clarity, but so long as the injunction provides sufficient notice of the prohibited or required conduct, it will stand. *See id.* at 883 (referring to contemporaneously issued memorandum construing statute). The notice requirement is flexible, to be applied "in the light of the circumstances surrounding (the injunction's) entry: the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent." *United States v. Phillip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) (quoting *Common Cause v. NRC*, 674 F.2d 921, 927 (D.C. Cir.1982)).[14] And when a policy as a whole is at issue rather than a

---

[14] The court in *Phillip Morris* upheld an injunction that, among other provisions, prohibited:

> making, or causing to be made in any way, any material false, misleading, or deceptive statement or representation, or engaging in any public relations or marketing endeavor that is disseminated to the United States public and that misrepresents or suppresses information concerning cigarettes. Such material statements *include, but are not limited to*, any matter that: (a) involves health, safety, *or other areas* with which a reasonable consumer or potential consumer of cigarettes would be concerned; (b) a reasonable consumer or potential consumer would attach importance to in determining whether to purchase or smoke cigarettes;

particular application of the policy, a broad injunction may be appropriate. As the Second Circuit has said about enjoining a policy, "[b]ecause it is the policy itself that constitutes the violation—rather than its application to a particular employee—the injunction could not be more narrowly tailored than it was." *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1542 (2d Cir. 1996).

Finally, the States have proposed an order necessary to obtain full relief. The Postal Service argues in effect that because the requested relief does not ask to split the Postal Service's operations in two—one for the Plaintiff States and one for the rest of the world—the requested relief would be an impermissible nationwide injunction. Defs.' Opp'n 65-66. But the proposed order seeks only the relief needed for the States' injuries. As a practical matter, the Postal Service is an "enterprise that spans every corner of this Nation." Defs.' Opp'n 58. It is charged with providing services "to patrons in all areas and . . . to all communities." 39 U.S.C. § 101(a). When transporting mail from, say, a sender in California to a recipient in Pennsylvania, the mail will be processed and transported through a number of States that are not plaintiffs in this action. And as the harms described *supra* demonstrate, decisions regarding how to transport and process mail can cause or exacerbate delays at any point in the process.

Thus, the States' proposed order would "afford complete relief to the States" and would not be "more burdensome to the defendant than necessary." *Pennsylvania v. President*, 930 F.3d 543, 575 (3d Cir. 2019) (quoting *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d

---

or (c) the Defendant, Covered Person or Entity making the representation knows *or has reason to know* that its recipient regards or is likely to regard as important in determining whether to purchase cigarettes or to smoke cigarettes, even if a reasonable person would not so regard it.

*Phillip Morris*, 566 F.3d at 1136-37 (emphasis added) (explaining the order was "not a generalized injunction to obey the law, especially when read in the context of the district court's legal conclusions and 4,088 findings of fact").

192, 206 (3d Cir. 2014) (footnote and internal quotation marks omitted)), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020). Indeed, the Postal Service does not suggest how an alternative—somehow dividing the Postal Service's operations that affect a plaintiff State and those that do not—is either realistic or even less burdensome.

Like the preliminary injunction already entered by the Court, the geographic scope of the permanent injunction cannot be limited to operations that occur only in one of the plaintiff States because of the very nature of the Postal Service and its statutory charge. *See Pennsylvania*, 490 F. Supp. 3d at 890-93. Any narrower order would provide less than complete relief to the States before this Court.

## CONCLUSION

The Court should grant the Plaintiffs' motion for summary judgment, declare that Defendants exceeded their authority and acted in violation of 39 U.S.C. § 101, § 403, and § 3661, and issue an appropriate permanent injunction.

July 2, 2021                              Respectfully submitted,

                                          JOSH SHAPIRO
                                          Attorney General
                                          Commonwealth of Pennsylvania
                                          MICHAEL J. FISCHER (Pa. Bar. No.
                                          322311)
                                          Chief Deputy Attorney General

                                           s/ *Aimee D. Thomson*
                                          AIMEE D. THOMSON (Pa. Bar. No.
                                          326328)
                                          RYAN B. SMITH (Pa. Bar. No. 324643)
                                          JACOB B. BOYER (Pa. Bar. No. 324396)
                                          Deputy Attorneys General
                                          Office of Attorney General
                                          1600 Arch Street, Suite 300
                                          Philadelphia, PA 19103
                                          (267) 374-2787
                                          athomson@attorneygeneral.gov
                                          *Attorneys for Plaintiff Commonwealth of*
                                          *Pennsylvania*

ROB BONTA                                 KATHLEEN JENNINGS
Attorney General                          Attorney General
State of California                       State of Delaware
MICHAEL NEWMAN                            CHRISTIAN DOUGLAS WRIGHT
Senior Assistant Attorney General         Director of Impact Litigation
SUSAN SLAGER                              JILLIAN A. LAZAR
Supervising Deputy Attorney General       VANESSA L. KASSAB
MARISSA MALOUFF                           Deputy Attorneys General
ANTHONY O'BRIEN*                          Delaware Department of Justice
JASLEEN SINGH*                            820 N. French Street, 5th Floor
LISA C. EHRLICH*                          Wilmington, DE 19801
Deputy Attorneys General                  (302) 577-8600
Office of the Attorney General for the State of   Vanessa.Kassab@delaware.gov
California                                *Attorneys for Plaintiff State of Delaware*
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3489
Lisa.Ehrlich@doj.ca.gov
*Attorneys for Plaintiff State of California*

KARL A. RACINE
Attorney General
District of Columbia
KATHLEEN KONOPKA*
Deputy Attorney General, Public Advocacy
Division
BRENDAN B. DOWNES*
Assistant Attorney General, Public Advocacy
Division
Office of the Attorney General for the District
of Columbia
400 6th St. NW
Washington, DC 20001
(202) 724-6610
Kathleen.Konopka@dc.gov
*Attorneys for Plaintiff District of Columbia*

AARON M. FREY
Attorney General
State of Maine
PAUL E. SUITTER*
JASON ANTON
Assistant Attorneys General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
Paul.Suitter@maine.gov
*Attorneys for Plaintiff State of Maine*

MAURA HEALEY
Attorney General
Commonwealth of Massachusetts
DAVID C. KRAVITZ*
Deputy State Solicitor
Office of Attorney General Maura Healey
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2427
david.kravitz@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

JOSHUA H. STEIN
Attorney General
State of North Carolina
SRIPRIYA NARASIMHAN
Deputy General Counsel
SARAH G. BOYCE*
Deputy Solicitor General
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6400
snarasimhan@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*Appearing pro hac vice